GRING v. CHESAPEAKE & DELAWARE CANAL CO.

(Circuit Court, D. Delaware. May 18, 1904.)

No. 232.

1. PRELIMINARY INJUNCTION—EX PARTE AFFIDAVITS.

It is a general though not universal rule that a preliminary injunction will not be granted on ex parte affidavits unless in a clear case. The rule admits of important exceptions including, among others, cases in which the function of the preliminary injunction is merely to maintain the status quo until final decree, where comparatively great injury may result from the withholding, and comparatively little can flow from the granting, of such injunction. In such cases the court regards with just discrimination the balance of convenience and hardship, and, in the absence of a final determination of right, aims so to resolve for the time being whatever doubt may exist as to do the most good and the least harm.

(Syllabus by the Court.)

In Equity.

Willard M. Harris and Harry P. Joslyn, for complainant.

Ward & Gray and George L. Crawford, for defendant.

BRADFORD, District Judge. This is a motion for a preliminary injunction on a bill brought by Charles Gring against the Chesapeake and Delaware Canal Company. The bill sets forth in substance that the defendant is a corporation created by special acts of assembly in Delaware, Maryland and Pennsylvania, and owns and controls a canal extending from Delaware Bay at Delaware City, Delaware, to the Chesapeake River at Chesapeake City, Maryland, which is open and navigable as a public highway free for the transportation of goods, commodities and products on payment of the tolls prescribed by law; that the complainant is the owner of certain steam tugs and other vessels and barges, and has for many years been engaged in the business of transporting lumber and other material between ports in North Carolina,

Virginia, Maryland and Pennsylvania by means of his vessels, and of towing barges and vessels with his steam tugs on Chesapeake Bay and river and Delaware Bay and river, and elsewhere, and particularly through the canal, and was and is entitled to use the same for navigation, towing and transportation of freight upon equal terms with other persons making a similar use of it, and without discrimination or undue obstruction or restraint; that during his use of the canal he has always conformed to the regulations of the defendant for the care, preservation, control and management of the canal and the safety of other vessels using it; that for a number of years last past the defendant has unwarrantably interfered with and delayed the progress of his vessels and barges through the canal and its locks, such interference and delay usually occurring on Sunday, while steamers, barges and vessels of other persons similarly navigating the canal have been allowed a free and unmolested passage through it; that the complainant's steam tugs with barges and vessels in tow on many occasions and on days other than Sunday have been unnecessarily and unreasonably delayed and hindered by the defendant in passing through the canal; that the defendant from 1895 to the present time has exacted from the complainant, in addition to the tolls paid by him for transportation through and navigation of the canal, in conformity with its charter and published toll rates, certain fixed pecuniary charges against his steam tugs by the trip or passage each way, whether towing loaded barges through the canal or returning with them light in thirty days, although such steam tugs do not carry and are not so constructed as to carry the commodities to which the toll rates are applicable; that such a charge or tax cannot be imposed upon the ground that the steam tugs are empty of cargo, for the reason that their tonnage capacity is occupied by the machinery, boilers and furniture necessary to enable them to engage in inland and coastwise towing; that such charge or tax is not imposed by the defendant upon all other persons owning tug boats engaged in the business of transporting lumber and other freight and towing the same through the canal; that the collection of the fixed charges or taxes per trip exacted from the complainant was enforced by preventing or threatening to prevent the passage of his tug boats with their tows through the canal until the same were paid or secured to the defendant; that for a number of years last past the defendant has imposed upon the complainant's tug boats, vessels and barges and collected from him as owner thereof greater rates of toll than those collected from other persons making a similar use of the canal; that during all that time he has been compelled by the defendant to pay a toll or tax for each of his steam tugs returning with light barges within thirty days from the time such steam tug passed through the canal with such barges loaded, although the defendant does not exact any charge for the barges towed back light by complainant's tug boats, the toll paid for the cargo when on board a barge insuring the free passage of the barge when returning light within thirty days; that the complainant's barges frequently have been delayed in unloading and reloading and have been unable to return through the canal within that period, and an entrance fee has been imposed upon them varying in amount as between different vessels; that he has been informed by the defendant that, if his barges

make five full trips in any one season, it will refund any charge or charges incurred by them in not returning light within thirty days; that these charges are onerous and injurious to the complainant's business; that the charges or toll against a tug boat while there is none against a light barge in tow, both returning within thirty days, is an unjust and wrongful discrimination in favor of the barge and gives an undue and unreasonable preference and advantage as against the complainant; that the regulation compelling his tug boats and barges to return light within thirty days or else suffer another charge or toll is, where his barges and vessels have paid the rate of toll prescribed for their cargoes, an unwarranted interference with the right of free navigation of the canal; that his steam tugs are duly enrolled and licensed under the laws of the United States for inland and coastwise towing and are properly inspected under the inspection laws of the United States; that their masters and engineers are duly licensed under the laws of the United States and qualified to command and operate them; that the defendant, nevertheless, compels the complainant to secure from it a permit for each of his steam tugs before using steam and towing through the canal, under an assumed right in that behalf; that the defendant arbitrarily reserves to itself the right, if such permit be granted, at any time to revoke the same and withdraw the privilege of using steam on the canal; that no such requirement is made with respect to vessels other than steam tugs engaged in through towing; that the right so claimed by the defendant is not warranted by its charter nor is it a rule for the good government of the canal or for the general convenience of vessels, but, on the contrary, annexes an onerous condition to the exercise by the complainant of the right, secured to him by virtue of the enrollment and license of his steam tugs, to the free and uncontrolled pursuit of the business of inland and coastwise towing and towing vessels engaged in interstate commerce; that the requirement by the defendant of such permit is not imposed on certain other steam tugs engaged in towing on the canal nor on other vessels, barges and steamers navigating it; that the complainant has been notified by the defendant that on and, after a certain early day, his steam tugs will be permitted to tow only such vessels and barges as it may designate, included in a list of his boats to be furnished by him to the defendant, and, further, that after such day the defendant must control the canal towing, and, further, that the towing by the complainant of barges and vessels, whether owned by other parties or by him, is but an extension by the defendant of a privilege to him and not a right vested in him, and, further, that on and after such day all barges and vessels, other than those owned by him, towed to the canal by his steam tugs, will be taken in charge by a steam tug controlled by the defendant and towed through the canal at a certain towage rate or rate in addition to the tolls charged on the cargoes of such barges and vessels or on such barges and vessels as empty, and, further, that, if the complainant shall effect an entrance into the canal and tow on it barges other than his own, a towing rate will be imposed on him for each barge towed and the privilege extended to his tug boats of using steam on the canal will be revoked, compelling them as well as such barges, whether belonging to him or to others, to be towed through the canal by a steam tug or steam

tugs controlled by the defendant, thus enforcing payment of a towing charge by the complainant's steam tugs as well as by the barges under his control, in addition to the canal charge for the use of the canal; that the enforcement of such a regulation by the defendant materially affects the free navigation of the canal which ever since it was constructed in or about 1820 has been open to public use for vessels, sailing as well as steam, upon payment of duly established rates of toll on commodities; that the control of the canal towing by the defendant is foreign to its chartered purpose, which is to provide a navigable public highway free for the transmission of commodities on payment of prescribed rates of tolls thereon; that the rules, regulations and restrictions proposed or adopted by the defendant, as above mentioned are an effort on its part arbitrarily to prescribe the use of the canal to such steam vessels, tug boats and other vessels as it may choose; that such restrictions constitute an unlawful interference with the right of private property; that their object is to prevent the free use of steam tugs, including those of the complainant, in the business for which they are licensed under the laws of the United States; that the hindrance and delays to which the complainant has been subjected in the premises by the defendant operate to his prejudice and disadvantage and impose unreasonable restraints and burdens upon subjects of interstate commerce; and that the detentions, delays, interference, discrimination and regulations complained of, if continued, will seriously hinder the complainant in the management of his business and materially impair the value of his floating equipment, to his loss and damage in a large amount, to wit, $20,000. The bill in substance prays, among other things, that the defendant may be perpetually restrained from hindering, delaying or interfering with the passage through the canal, at any time, of the steam tugs, barges or vessels of the complainant or those chartered or managed by him, upon the payment or offer to pay the prescribed rate of tolls on cargo on board; or from charging, demanding or collecting any toll, tax or charge against the complainant or his tug boats, while engaged in aiding, towing or pushing vessels and barges through the canal; or from making any larger charge against the complainant and his tug boats, barges and other vessels for the transportation of freight through the canal than that charged against any other person or company for the transportation of similar freight through it, whether the difference in charge be made by drawback, rebate, or in any other manner; or from charging, demanding or collecting any toll from the complainant and his tug boats and from him and his barges and vessels when returning light through the canal after the expiration of thirty days from the time when tolls were levied and collected on cargoes on board such barges or vessels; or from interfering or preventing the use of steam on the complainant's tug boats in towing on or navigating the canal, or requiring him to secure a permit to use steam or to tow on the canal, or withdrawing or revoking any permit, privilege or right granted by the defendant, or exercised by the complainant with respect to the use of steam and towing on the canal; or from charging, demanding or collecting from the complainant or his steam tugs or barges any charge for towage or towing privilege, in addition to the regular tolls charged against him or his

barges or vessels for the transportation of freight through the canal, or hindering or delaying the passage through the canal of his steam tugs arriving at the locks, with such barges as may be in tow, until such towage charge heretofore or hereafter demanded is paid or secured, or on any pretext whatever, if the regular tolls for the transportation of the freight through the canal are paid or tendered by the complainant or his agents; or from requiring the complainant to give to the defendant a list of his boats; or from controlling the canal towing. The bill also prays for a preliminary injunction restraining the defendant from "any further hindrance or interference pending this cause." In this latter prayer it is not asked that the defendant until the further order of the court or during the pendency of the suit be restrained in like manner as set forth in the prayer for a permanent injunction. It well may be doubted whether a prayer against "any further hindrance or interference" is sufficiently definite or broad enough to include the several kinds of relief specifically mentioned in the former prayer. But, entirely aside from this consideration, there are sufficient reasons why, without the expression at this stage of the case of any opinion touching its merits, a preliminary injunction should be denied. The bill, answer and affidavits present grave questions of law and fact which can satisfactorily be solved only on final hearing after plenary proofs shall have been adduced. The affidavits are numerous, voluminous and conflicting on material points. It would be not only premature but improper to express an opinion as to the merits on the present showing, nor can the court perceive any reason why the preparation of the case for final hearing should entail much delay. It has been at issue since October 19, 1903. It is a general, though not universal, rule, repeatedly enforced in this district, that a preliminary injunction will not be granted on ex parte affidavits unless in a clear case. The rule admits of important exceptions. Those exceptions include, among others, cases in which the function of the preliminary injunction is merely to maintain the status quo until final decree, where comparatively great injury may result from the withholding, and comparatively little can flow from the granting, of such injunction. In such cases the court regards with just discrimination the balance of convenience and hardship, and, in the absence of a final determination of right, aims so to resolve for the time being whatever doubt may exist as to do the most good and the least harm. This case does not fall within the exceptions to the rule. It appears from the bill that some of the regulations complained of have been enforced for years. With respect to these a preliminary injunction would operate, not to preserve the status quo in any legitimate sense, but to change the method and system of the defendant, and possibly cause confusion in the conduct of its business. Nor is there any such exigency as to demand immediate relief by injunction. It does not appear, nor is it alleged, that the defendant is insolvent or has not abundant means with which to respond to the complainant in damages for any wrongs in the premises it may have inflicted or may until final decree inflict on him.

The application for a preliminary injunction must, therefore, be denied; the costs to abide the event of the cause.