**HAND v. MISSOURI–KANSAS PIPE LINE CO. et al.**

Civil Action No. 386.

District Court, D. Delaware.

March 18, 1944.

Edwin D. Steel (of Morris, Steel & Nichols), of Wilmington, Del., for plaintiff.

Aaron Pinger (of Richards, Layton & Pinger), of Wilmington, Del., for individual defendants.

Stewart Lynch, of Wilmington, Del., for corporate defendant.

LEAHY, District Judge.

■ Defendants contend that the question to be decided is to what extent corporate funds may be expended in supporting the management's side of a controversy against stockholders who are in disagreement with the management and who are seeking in a contest to elect directors to substitute their views or their control for the views and control of the present management. Plaintiff contends that this is not the question for decision. He argues that the professional proxy solicitors were first approached in the early part of January, 1944, at a time when management had no definite plan to submit to the stockholders; and that the first notice stockholders received of the management's plan was that contained in the notices of the annual meeting which were sent on February 15, 1944. He argues from this that at the time the proxy solicitors were engaged in early January it could have been for one purpose only, i. e., to insure the procurement of sufficient proxies to establish the reelection of the present directors. As Delaware law is applicable, he relies on Hall v. Trans-Lux Daylight Picture Screen Corp., 20 Del.Ch. 78, 171 A. 226, and argues the late Chancellor Wolcott held that corporate funds could not be expended by directors for the purpose of their own reelection. Defendants rely on the same authority and argue, quite correctly I think, that the precise decision in the Hall case was that where stockholders are called on to decide controversies over substantial questions of policy as distinguished from inconsequential matters and personnel of management, directors may make such expenditures from corporate funds as are reasonably necessary to inform stockholders of considerations in support of the policy advocated by directors under attack, and in such communications directors may solicit proxies in their favor.[1]

■ Although the present management was informed on February 28, 1944, that the Stockholders' Committee was in favor of the plan of liquidation and that it was not, therefore, in disagreement on that policy question, nevertheless, at least two other groups are soliciting proxies in opposition to the plan. True, one is a stockholder holding a small number of shares; but the other stockholder has played an important role in Mokan's past and is familiar with the policy questions confronting the company. His communications to the stockholders show that he is in extreme disagreement with management's plan and their policies in general. While he wrote a letter to the Stockholders' Committee informing it that he would propose an amendment to the plan at the annual meeting, and if he were unsuccessful in having the amendment carried he would then vote for the plan, the fact remains that he has crossed swords with management on questions of policy and is urging all stockholders to adopt his views. Sharp questions of fact must first be determined before the legal decision can be made as to whether the directors were justified in spending corporate funds by engaging professional proxy solicitors early in January and paying them for their services up to March 6 when the

---

[1] The Hall case does not, however, decide whether the employment of professional proxy solicitors is a proper method to inform stockholders of considerations in support of the policy advocated by management. In fact, a search discloses no authority in Delaware on the question.

stockholder in question first sent out his proxy material. This question can only be determined after a final hearing, in view of the fact that defendants make an issue of this question. After all the facts are in, it will be necessary to decide (1) whether there was a substantial question of policy involved and (2) even if there was, may it be said that management can spend corporate funds to employ professional proxy solicitors as a medium of information to get their views across to the stockholders.

The relief sought in the instant case calls for an extraordinary process. It is the rule of this district and circuit that a preliminary injunction does not issue where the pleadings and affidavits disclose that the parties are in serious dispute on questions of fact and law. United States v. Weirton Steel Co., D.C.Del., 7 F.Supp. 255; General Talking Pictures Corp. v. Stanley Co. of America, D.C.Del., 42 F.2d 904. Moreover, a preliminary injunction does not issue unless there is a threat of irreparable injury. Cinema Patents Co., Inc., v. Craft Film Laboratories, Inc., D.C. Del., 42 F.2d 749; Best Foods, Inc., v. Hemphill Packing Co., D.C.Del., 295 F. 425. The threatened damage to plaintiffs must be irremediable. Gring v. Chesapeake & D. Canal Co., C.C.Del., 129 F. 996. Plaintiff has failed to make a showing by his affidavits that he has satisfied the rules of these cases.

In effect, plaintiff prays the court not only to enjoin the expenditure of any further corporate funds for the solicitation of proxies but that I disenfranchise those proxies, obtained by the proxy solicitors, from voting for the election of new directors on the ground that such proxies were procured by the illegal use of corporate funds and were, therefore, fraudulently procured. Aside from what the showing will be at the final hearing, at the moment I am unable to find a source of equity power to decree that these proxies should be disenfranchised by the issuance of a preliminary injunction. This would be strange equity, in view of the fact that the proxy is revocable at any time. Corporate democracy frequently becomes a nullity when stockholders are misled into giving a proxy. But there is no showing here that this was the case. We have no stockholder who gave a proxy to defendants and is complaining that his proxy was obtained illegally or by misrepresentation. Neither have we a complaint such as occasionally occurs where the Securities and Exchange Commission seeks to enjoin the use of proxies which have been unlawfully procured. Where one faction thinks the other has no right to use corporate funds in connection with an annual election, until a court finds such use illegal, the members of this Stockholders' Committee, for example, now that the meeting has been adjourned from March 21, 1944, for at least another month and maybe longer, have sufficient time to discuss with their fellow stockholders what they consider is the vice in management's utilization of professional proxy solicitors in this case, as well as the spending of corporate funds for such purpose; and attempt to persuade such stockholders to revoke their proxies [2] authorizing the vote for the election of present directors. If the management's conduct in expending corporate funds is to be determined to be illegal, the only question in the case, under the pleading and affidavits now before me, is how much money they should return to the corporation's treasury. There may arise situations where the use of corporate funds is so unlawful that a court of equity would be compelled to vitiate proxies. If the ultimate finding here is that Mokan should be repaid by the directors for the money spent for the proxy solicitors, it is true that Maguire and his associates will have had the advantage of the proxy solicitors' services between February 15 and March 6. This is a substantial advantage by one faction against another. But it is not the function of the court to lend its aid to opposing factions in order that they may break from the barrier together as the starting bell rings.

The motion for preliminary injunction is denied.

---

[2] Cf. Securities and Exchange Comm. v. O'Hara, D.C., 28 F.Supp. 523, where the court found that certain proxies were secured unlawfully and should accordingly not be counted. An injunction was issued against the use of these proxies, but the court, in order not to disenfranchise the shareholders whose proxies were invalidated, ordered a postponement of the annual meeting to afford time to obtain new and valid proxies.