94 A.2d 217 (1953)
KERBS et al.
v.
CALIFORNIA EASTERN AIRWAYS, Inc.
Court of Chancery of Delaware, New Castle.
January 20, 1953.
*218 Arthur G. Logan, of Logan, Marvel & Boggs, Wilmington, for plaintiffs.
David F. Anderson, of Berl, Potter & Anderson, Wilmington, and Walter R. Barry, James E. Hughes and George F. Mason, Jr., of Coudert Brothers, New York City, for defendant.
SEITZ, Chancellor.
The question is whether a certain profit sharing plan was effectively ratified by the stockholders.
The defendant corporation's board of directors adopted a Profit Sharing Plan which plaintiffs attacked in this court. After the trial, but before the decision, the directors called a meeting to request stockholder ratification of the plan. This court's decision[1] upholding the plan came down before the meeting date and the subsequent stockholder ratification was therefore not involved in this court's decision. Plaintiffs appealed and in connection with the appeal the Corporation raised for the first time the defense based upon ratification. The Supreme Court declared the director action approving the plan invalid for want of an affirmative vote by a disinterested quorum.[2] Thus that Court was required to face the issue presented by the stockholder ratification. The Supreme Court decided that the question should be presented to the trial court, noting the following guide:
"Necessarily, the effectiveness of such ratification depends upon the type of notice sent to the stockholders and of the explanation to them of the plan itself. We think, however, if there was effective ratification by the stockholders that the profit-sharing plan is valid."
A hearing on this issue was held by this court and this is the decision thereon.
Plaintiffs charge that there was no effective ratification because:
(1) The proxies solicited by Management contained false and misleading statements as to material facts and omitted to state a material fact.
(2a) The vote was close and was carried only because the votes of the interested beneficiaries were counted in favor of the plan.
(2b) The Management utilized professional solicitors to obtain proxies.
I shall first consider the alleged false and misleading statements of material facts. Defendant says that I should not consider them because they should have been questioned seasonably, the meeting having taken place October 10, 1951. However, because of the Supreme Court's language I pass over this objection and consider the charges on their merits.
The stockholder ratification vote was cast as part of a stockholders' election of directors. The two factions engaged in a prolonged and bitter proxy campaign. The matter must be viewed against that background with a realization that, as in other types of campaigns, the verbal niceties are not always observed. There is almost necessarily an area of what might be called "permissible puffing" of one's candidacy. I say this with full realization that it will probably be quoted by one side in every future similar case.
Plaintiffs charge that in a letter dated September 12, 1951, signed by the president, there is a statement that the total amount of stock held by the Stockholders' Protective Committee was less than 5% of the outstanding stock when in fact it was more than 10%. Assuming this would be a material misrepresentation, the short answer is that the record does not support a showing that at that time defendant knew or reasonably should have known that the Committee represented more than 5% of the stock.
The plaintiffs say next that the charge against the Committee concerning the circulation of false and misleading statements and omitting pertinent facts was itself false because the Committee did not send out any letter to stockholders until September 17, 1951. Once again the record just does not support plaintiffs' contention.
*219 Plaintiffs charge that a Management letter to the stockholders dated October 1, 1951 contained the false statement that the "Delaware court has entirely supported the position of your Company's present management on the stock option and profit sharing plans!" Plaintiffs say this was false because the court did not decide the question of the reasonableness of the total compensation. The statement of the scope of this court's decision was not such as to constitute misrepresentation.
Plaintiffs next contend that the Management solicitation of October 4, 1951 contained the false statement that this court had found that the costs of the management profit sharing and stock option plans were not excessive. The plaintiffs contend that the court made no such finding. Once again this statement was within a fair non-legal interpretation of this court's conclusion.
Plaintiffs next urge that the Management solicitation material omitted a material matter. It consisted of the failure of the board to advise the stockholders that at the meeting of directors which approved the plan, five of the eight directors present were interested and that under Delaware law there was not present a quorum of disinterested directors. Leaving aside the fact that not even plaintiffs' attorney "discovered" and raised this point until the case reached the Supreme Court, I conclude that the stockholders were fairly acquainted with the plan and the identity of the management beneficiaries thereunder. The fact that they did not point out the quorum point did not under the existing circumstances constitute a misrepresentation.
Plaintiffs say that the plan is invalid because the vote was close and the vote of the stock of the interested directors was required in order to approve the plan. The reason for this contention is not apparent where nothing more appears. I find no merit to this contention.
Finally plaintiffs say the proxies solicited by Management are invalid because a professional proxy solicitor was employed. Plaintiffs say our Federal District Court in Hand v. Missouri-Kansas Pipe Line Co., 54 F.Supp. 649, 651, questioned its legality. It is true that Judge Leahy there stated that "There may arise situations where the use of corporate funds is so unlawful that a court of equity would be compelled to vitiate proxies". However, there is nothing in the present record to show that the stockholders were mislead or that the corporate funds were so flagrantly used that votes so obtained should not be counted. I am not required to decide whether the payments to the professional solicitors were proper charges against corporate funds. I conclude that plaintiffs' contention is without merit.
I conclude that the Profit Sharing Plan was effectively ratified and is therefore valid.
Order on notice.
NOTES
[1] See Kerbs v. California Eastern Airways, Del., 83 A.2d 473.
[2] See Kerbs v. California Eastern Airways, Del., 90 A.2d 652, 659.