WILLIAM ROSENFELD, on Behalf of Himself and All Other Stockholders of FAIRCHILD ENGINE AND AIRPLANE CORPORATION, Similarly Situated, Appellant, *v.* FAIRCHILD ENGINE AND AIRPLANE CORPORATION et al., Respondents, et al., Defendants.

Argued March 2, 1955; decided July 8, 1955.

*Abraham Marcus, Alan J. Stein* and *William Rosenfeld,* in person, for William Rosenfeld, appellant.  I. The expenditure by the incumbent board of directors of corporate funds to obtain its own re-election in a proxy fight was improper.  (*Lawyers' Adv. Co.* v. *Consolidated Ry. Lighting & Refrig. Co.,* 187 N. Y. 395; *Cherwien* v. *Geiter,* 272 N. Y. 165; *Matter of Marchant* v. *Mead-Morrison Mfg. Co.,* 252 N. Y. 284; *Weissman* v. *Banque De Bruxelles,* 254 N. Y. 488; *Savage* v. *O'Neil,* 44 N. Y. 298; *Hall* v. *Trans-Lux Daylight Picture Screen Corp.,* 20 Del. Ch. 78; *Hand* v. *Missouri-Kansas Pipe Line Co.,* 54 F. Supp. 649; *Peel* v. *London & North Western Ry. Co.,* [1907] 1 Ch. 5; *Steinberg* v. *Adams,* 90 F. Supp. 604.)  II. The holdings below approving reimbursement out of corporate funds for proxy expenses of successful insurgents are based on fundamental misconceptions of legal theory.  III. The Appellate Division, in denying recovery on procedural grounds for the " substantial amount of needless

expense which was charged to the corporation ", ignored the settled rule in equity actions that proof of wrongdoing requires a judgment for an accounting; and ignored the rule placing the burden of proof upon the directors who caused the improper expenditures to be made. (*Owen* v. *Blumenthal*, 280 N. Y. 96; *Sheehan* v. *Moore & McCormack Co.*, 219 App. Div. 317; *Sage* v. *Culver*, 147 N. Y. 241; *Fur & Wool Trading Co.* v. *Fox*, 245 N. Y. 215; *German-Amer. Coffee Co.* v. *O'Neil*, 216 N. Y. 726; *Godley* v. *Crandall & Godley Co.*, 153 App. Div. 697, 212 N. Y. 121; *Hine* v. *Lausterer*, 135 Misc. 397, 232 App. Div. 719, 257 N. Y. 523; *Kreitner* v. *Burgweger*, 174 App. Div. 48; *Hyams* v. *Calumet & Hecla Min. Co.*, 221 F. 529.) IV. The new board of directors should have been held liable for permitting payment to be made by the corporation of improper expenditures incurred by the former board. (*Matter of Horowitz*, 272 App. Div. 942, 297 N. Y. 252; *Carr* v. *Kimball*, 153 App. Div. 825, 215 N. Y. 634.) V. Stockholders' ratification of the improper expenditures of corporate moneys to reimburse the successful insurgent group was invalid and ineffective. As a gift and waste of corporate funds, the reimbursement could not be ratified. (*Matter of Pennsylvania Whiskey Distr. Corp.* v. *Bruckman*, 256 App. Div. 781; *Continental Securities Co.* v. *Belmont*, 206 N. Y. 7; *Rogers* v. *Hill*, 289 U. S. 582; *Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113; *Schwab* v. *Potter Co.*, 194 N. Y. 409; *Wheeler* v. *Home Sav. Bank*, 188 Ill. 34; *Holland Baking Co.* v. *Continental Nat. Bank*, 324 Mo. 1.) VI. Ratification, in any event, was ineffective because obtained upon a false and misleading proxy statement. (*General Investment Co.* v. *American Hide & Leather Co.*, 97 N. J. Eq. 214; *Berendt* v. *Bethlehem Steel Corp.*, 108 N. J. Eq. 148; *Cahall* v. *Lofland*, 12 Del. Ch. 299, 13 Del. Ch. 384.) VII. Stockholders' ratification of insurgents' reimbursement cannot be held to constitute an implied ratification of incumbents' improper expenditures. (*Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113.) VIII. The release of Ward did not have the effect of releasing the other old directors. The old directors other than Ward, having given no consideration, cannot be deemed released. (*Rider* v. *Morrison*, 54 Md. 429; *McQuillen* v. *National Cash Register Co.*, 27 F. Supp. 639, 112 F. 2d 877, 311 U. S. 695, 311 U. S. 729; *Rogers* v. *Hill*, 289 U. S. 582; *Gilbert* v. *Finch*, 72 App. Div. 38, 173 N. Y. 455; *Bessilieu* v. *Brown*, 177 N. C. 65.)

*Harold R. Medina, Jr.,* for O. Parker McComas and another, respondents. I. The old board properly used corporate funds to present their views to the stockholders and to solicit support of those views. (*Peel* v. *London & North Western Ry. Co.,* [1907] 1 Ch. 5; *Hand* v. *Missouri-Kansas Pipe Line Co.,* 54 F. Supp. 649; *Steinberg* v. *Adams,* 90 F. Supp. 604; *Atwater* v. *Elkhorn Valley Coal-Land Co.,* 184 App. Div. 253, 227 N. Y. 611; *Godley* v. *Crandall & Godley Co.,* 181 App. Div. 75, 227 N. Y. 656; *Rascovor* v. *American Linseed Co.,* 135 F. 341; *Lawyers' Adv. Co.* v. *Consolidated Ry. Lighting & Refrig. Co.,* 187 N. Y. 395.) II. Even if the old board improperly expended corporate funds in the proxy contest, the ward release was valid and therefore discharged them from all claims.

*Jacquelin A. Swords* and *William K. Zinke* for Sherman M. Fairchild, respondent. I. Management may expend corporate funds to finance a proxy contest provided the contest revolves around matters of corporate policy and provided the expenditures, under the circumstances, are reasonable. (*Peel* v. *London & North Western Ry. Co.,* [1907] 1 Ch. 5; *Hall* v. *Trans-Lux Daylight Picture Screen Corp.,* 20 Del. Ch. 78; *Hand* v. *Missouri-Kansas Pipe Line Co.,* 54 F. Supp. 649; *Steinberg* v. *Adams,* 90 F. Supp. 604; *Lawyers' Adv. Co.* v. *Consolidated Ry. Lighting & Refrig. Co.,* 187 N. Y. 395; *Rascovor* v. *American Linseed Co.,* 135 F. 341.) II. Respondent Fairchild cannot be held liable for having permitted payment of expenses incurred by the old board in connection with the proxy fight. III. Members of a stockholder's committee successful in a proxy contest in ridding their corporation of its old management may be reimbursed by vote of majority stockholders for their expenses. (*Murray* v. *Requardt,* 180 Md. 245; *Pollitz* v. *Wabash R. R. Co.,* 207 N. Y. 113; *Trustees* v. *Greenough,* 105 U. S. 527; *Sprague* v. *Ticonic Bank,* 307 U. S. 161.) IV. The proxy statement accompanying the notice of the 1950 annual stockholders' meeting, at which the reimbursement was approved, was not false or misleading. (*Koplar* v. *Warner Bros. Pictures,* 19 F. Supp. 173; *Doyle* v. *Milton,* 73 F. Supp. 281.)

*Samuel J. Silverman* for James A. Allis, respondent. Respondent Allis acted both prudently and reasonably in a situation in which neither his good faith nor his disinterestedness is

questioned; he merely exercised his best judgment on a corporate problem, receiving no personal benefit from it. In these circumstances, there can be no recovery as against Allis for any part of the sums expended. (*Blaustein* v. *Pan Amer. Petroleum & Transport Co.*, 263 App. Div. 97, 293 N. Y. 281; *Carr* v. *Kimball*, 153 App. Div. 825, 215 N. Y. 634; *Matter of Horowitz*, 272 App. Div. 942, 297 N. Y. 252; *Simon* v. *Socony-Vacuum Oil Co.*, 179 Misc. 202, 267 App. Div. 890; *Macdougall* v. *Gardiner*, 1 Ch. D. 13.)

FROESSEL, J. In a stockholder's derivative action brought by plaintiff, an attorney, who owns 25 out of the company's over 2,300,000 shares, he seeks to compel the return of $261,522, paid out of the corporate treasury to reimburse both sides in a proxy contest for their expenses. The Appellate Division has unanimously affirmed a judgment of an Official Referee dismissing plaintiff's complaint on the merits, and we agree. Exhaustive opinions were written by both courts below, and it will serve no useful purpose to review the facts again.

Of the amount in controversy $106,000 were spent out of corporate funds by the old board of directors while still in office in defense of their position in said contest; $28,000 were paid to the old board by the new board after the change of management following the proxy contest, to compensate the former directors for such of the remaining expenses of their unsuccessful defense as the new board found was fair and reasonable; payment of $127,000, representing reimbursement of expenses to members of the prevailing group, was expressly ratified by a 16 to 1 majority vote of the stockholders.

The essential facts are not in dispute, and, since the determinations below are amply supported by the evidence, we are bound by the findings affirmed by the Appellate Division. The Appellate Division found that the difference between plaintiff's group and the old board " went deep into the policies of the company ", and that among these Ward's contract was one of the " main points of contention ". The Official Referee found that the controversy " was based on an understandable difference in policy between the two groups, at the very bottom of which was the Ward employment contract ".

By way of contrast with the findings here, in *Lawyers' Adv. Co.* v. *Consolidated Ry. Lighting & Refrig. Co.* (187 N. Y. 395), which was an action to recover for the cost of publishing newspaper notices not authorized by the board of directors, it was expressly found that the proxy contest there involved was " by one faction in its contest with another for the control of the corporation * * * a contest for the perpetuation of their offices and control " (p. 399). We there said by way of *dicta* that under *such* circumstances the publication of certain notices on behalf of the management faction was not a corporate expenditure which the directors had the power to authorize.

Other jurisdictions and our own lower courts have held that management may look to the corporate treasury for the reasonable expenses of soliciting proxies to defend its position in a bona fide policy contest (*Peel* v. *London & North Western Ry. Co.*, [1907] 1 Ch. 5; *Kadel* v. *Segal Lock & Hdwe. Co.*, N. Y. L. J., Sept. 21, 1953, p. 488, col. 4 [Sup. Ct., N. Y. Co.]; *McGoldrick* v. *Segal*, N. Y. L. J., Sept. 14, 1950, p. 461, col. 2 [Sup. Ct., N. Y. Co.]; *Matter of Zickl*, 73 N. Y. S. 2d 181, 185; *Howard* v. *Segal Lock & Hdwe. Co.*, N. Y. L. J., Feb. 13, 1953, p. 496, col. 6 [City Ct., N. Y. Co.]; *Appeal Print. Co.* v. *Segal Lock & Hdwe. Co.*, N. Y. L. J., Dec. 22, 1952, p. 1563, col. 3 [City Ct., N. Y. Co.]; *Steinberg* v. *Adams*, 90 F. Supp. 604 [S. D. N. Y.]; *Hand* v. *Missouri-Kansas Pipe Line Co.*, 54 F. Supp. 649 [D. Del.]; *Empire So. Gas Co.* v. *Gray*, 29 Del. Ch. 95; *Hall* v. *Trans-Lux Daylight Picture Screen Corp.*, 20 Del. Ch. 78).

It should be noted that plaintiff does not argue that the aforementioned sums were fraudulently extracted from the corporation; indeed, his counsel conceded that " the charges were fair and reasonable ", but denied " they were legal charges which may be reimbursed for ". This is therefore not a case where a stockholder challenges specific items, which, on examination, the trial court may find unwarranted, excessive or otherwise improper. Had plaintiff made such objections here, the trial court would have been required to examine the items challenged.

If directors of a corporation may not in good faith incur reasonable and proper expenses in soliciting proxies in these days of giant corporations with vast numbers of stockholders, the corporate business might be seriously interfered with because of stockholder indifference and the difficulty of procuring a

quorum, where there is no contest. In the event of a proxy contest, if the directors may not freely answer the challenges of outside groups and in good faith defend their actions with respect to corporate policy for the information of the stockholders, they and the corporation may be at the mercy of persons seeking to wrest control for their own purposes, so long as such persons have ample funds to conduct a proxy contest. The test is clear. When the directors act in good faith in a contest over policy, they have the right to incur reasonable and proper expenses for solicitation of proxies and in defense of their corporate policies, and are not obliged to sit idly by. The courts are entirely competent to pass upon their *bona fides* in any given case, as well as the nature of their expenditures when duly challenged.

It is also our view that the members of the so-called new group could be reimbursed by the corporation for their expenditures in this contest by affirmative vote of the stockholders. With regard to these ultimately successful contestants, as the Appellate Division below has noted, there was, of course, " no duty * * * to set forth the facts, with corresponding obligation of the corporation to pay for such expense ". However, where a majority of the stockholders chose — in this case by a vote of 16 to 1 — to reimburse the successful contestants for achieving the very end sought and voted for by them as owners of the corporation, we see no reason to deny the effect of their ratification nor to hold the corporate body powerless to determine how its own moneys shall be spent.

The rule then which we adopt is simply this: In a contest over policy, as compared to a purely personal power contest, corporate directors have the right to make reasonable and proper expenditures, subject to the scrutiny of the courts when duly challenged, from the corporate treasury for the purpose of persuading the stockholders of the correctness of their position and soliciting their support for policies which the directors believe, in all good faith, are in the best interests of the corporation. The stockholders, moreover, have the right to reimburse successful contestants for the reasonable and bona fide expenses incurred by them in any such policy contest, subject to like court scrutiny. That is not to say, however, that corporate directors can, under any circumstances, disport themselves in a proxy contest with the corporation's moneys to an unlimited extent.

Where it is established that such moneys have been spent for personal power, individual gain or private advantage, and not in the belief that such expenditures are in the best interests of the stockholders and the corporation, or where the fairness and reasonableness of the amounts allegedly expended are duly and successfully challenged, the courts will not hesitate to disallow them.

The judgment of the Appellate Division should be affirmed, without costs.

DESMOND, J. (concurring). We granted leave to appeal in an effort to pass, and in the expectation of passing, on this question, highly important in modern-day corporation law: is it lawful for a corporation, on consent of a majority of its stockholders, to pay, out of its funds, the expenses of a " proxy fight ", incurred by competing candidates for election as directors? Now that the appeal has been argued, I doubt that the question is presented by this record. The defendants served were Allis who was on the old board but was re-elected to the new board, McComas and Wilson, defeated members of the old board, and Fairchild, leader of the victorious group and largest stockholder in the corporation. The expenses of the old board, or management group, in the proxy fight, were about $134,000, and those of the victorious Fairchild group amounted to about $127,500. In the end, the corporation paid both those sums, and it is for the reimbursement thereof, to the corporation, that this stockholder's derivative action is brought. Of the proxy fight expenses of the management slate, about $106,000 was paid out on authorization of the old board while the old directors were still in office. The balance of those charges, as well as the whole of the expenses of the new, and successful, Fairchild group, was paid by the corporation after the new directors had taken over and after a majority of stockholders had approved such expenditures. The election had been fought out on a number of issues, chief of which concerned a contract which Ward (a defendant not served), who was a director and the principal executive officer of the company, had obtained from the corporation, covering compensation for, and other conditions of, his own services. Each side, in the campaign for proxies, charged the other with seeking to perpetuate, or grasp, control of the corporation. The

Fairchild group won the election by a stock vote of about two-to-one, and obtained, at the next annual stockholders' meeting and by a much larger vote, authorization to make the payments above described.

Plaintiff asserts that it was illegal for the directors (unless by unanimous consent of stockholders) to expend corporate moneys in the proxy contest beyond the amounts necessary to give to stockholders bare notice of the meeting and of the matters to be voted on thereat. Defendants say that the proxy contest revolved around disputes over corporate policies and that it was, accordingly, proper not only to assess against the corporation the expense of serving formal notices and of routine proxy solicitation, but to go further and spend corporate moneys, on behalf of each group, thoroughly to inform the stockholders. The reason why that important question is, perhaps, not directly before us in this lawsuit is because, as the Appellate Division properly held, plaintiff failed " to urge liability as to specific expenditures ". The cost of giving routinely necessary notice is, of course, chargeable to the corporation. It is just as clear, we think, that payment by a corporation of the expense of " proceedings by one faction in its contest with another for the control of the corporation " is *ultra vires,* and unlawful (*Lawyers' Adv. Co.* v. *Consolidated Ry. Lighting & Refrig. Co.,* 187 N. Y. 395, 399). Approval by directors or by a majority stock vote could not validate such gratuitous expenditures (*Continental Securities Co.* v. *Belmont,* 206 N. Y. 7). Some of the payments attacked in this suit were, on their face, for lawful purposes and apparently reasonable in amount but, as to others, the record simply does not contain evidentiary bases for a determination as to either lawfulness or reasonableness. Surely, the burden was on plaintiff to go forward to some extent with such particularization and proof. It failed to do so, and so failed to make out a prima facie case.

We are, therefore, reaching the same result as did the Appellate Division but on one only of the grounds listed by that court, that is, failure of proof. We think it not inappropriate, however, to state our general views on the question of law principally argued by the parties, that is, as to the validity of corporate payments for proxy solicitations and similar activities in addition to giving notice of the meeting, and of the questions to

be voted on. For an answer to that problem we could not do better than quote from this court's opinion in the *Lawyers' Adv. Co.* case (187 N. Y. 395, 399, *supra*): " The remaining notices were not legally authorized and were not legitimately incidental to the meeting or necessary for the protection of the stockholders. They rather were proceedings by one faction in its contest with another for the control of the corporation, and the expense thereof as such is not properly chargeable to the latter. This is so apparent as to the last two notices that nothing need be said in reference to them but a few words may be said in regard to the first one calling for proxies. It is to be noted that this is not the case of an ordinary circular letter sent out with and requesting the execution of proxies. The custom has become common upon the part of corporations to mail proxies to their respective stockholders often accompanied by a brief circular of directions, and such custom when accompanied by no unreasonable expenditure is not without merit in so far as it encourages voting by stockholders through making it convenient and ready at hand. The notice in question, however, was not published until after proxies had been sent out. It simply amounted to an urgent solicitation that these proxies should be executed and returned for use by one faction in its contest, and we think there is no authority for imposing the expense of its publication upon the company. * * * it would be altogether too dangerous a rule to permit directors in control of a corporation and engaged in a contest for the perpetuation of their offices and control, to impose upon the corporation the unusual expense of publishing advertisements or, by analogy, of dispatching special messengers for the purpose of procuring proxies in their behalf.''

A final comment: since expenditures which do not meet that test of propriety are intrinsically unlawful, it could not be any answer to such a claim as plaintiff makes here that the stockholder vote which purported to authorize them was heavy or that the change in management turned out to be beneficial to the corporation.

The judgment should be affirmed, without costs.

VAN VOORHIS, J. (dissenting). The decision of this appeal is of far-reaching importance insofar as concerns payment by corporations of campaign expenses by stockholders in proxy

contests for control. This is a stockholder's derivative action to require directors to restore to a corporation moneys paid to defray expenses of this nature, incurred both by an incumbent faction and by an insurgent faction of stockholders. The insurgents prevailed at the annual meeting, and payments of their own campaign expenses were attempted to be ratified by majority vote. It was a large majority, but the stockholders were not unanimous. Regardless of the merits of this contest, we are called upon to decide whether it was a corporate purpose (1) to make the expenditures which were disbursed by the incumbent or management group in defense of their acts and to remain in control of the corporation, and (2) to defray expenditures made by the insurgent group, which succeeded in convincing a majority of the stockholders. The Appellate Division held that stockholder authorization or ratification was not necessary to reasonable expenditures by the management group, the purpose of which was to inform the stockholders concerning the affairs of the corporation, and that, although these incumbents spent or incurred obligations of $133,966 (the previous expenses of annual meetings of this corporation ranging between $7,000 and $28,000), plaintiff must fail for having omitted to distinguish item by item between which of these expenditures were warranted and which ones were not; and the Appellate Division held that the insurgents also should be reimbursed, but subject to the qualification that " The expenses of those who were seeking to displace the management should not be reimbursed by the corporation except upon approval by the stockholders." It was held that the stockholders had approved.

No resolution was passed by the stockholders approving payment to the management group. It has been recognized that not all of the $133,966 in obligations paid or incurred by the management group was designed merely for information of stockholders. This outlay included payment for all of the activities of a strenuous campaign to persuade and cajole in a hard-fought contest for control of this corporation. It included, for example, expenses for entertainment, chartered airplanes and limousines, public relations counsel and proxy solicitors. However legitimate such measures may be on behalf of stockholders themselves in such a controversy, most of them do not pertain to a corporate function but are part of the familiar apparatus of

aggressive factions in corporate contests. In *Lawyers' Adv. Co. v. Consolidated Ry. Lighting & Refrig. Co.* (187 N. Y. 395, 399), this court said: " The notice in question, however, was not published until after proxies had been sent out. It simply amounted to an urgent solicitation that these proxies should be executed and returned for use by one faction in its contest, and we think there is no authority for imposing the expense of its publication upon the company. It may be conceded that the directors who caused this publication acted in good faith and felt that they were serving the best interests of the stockholders, but it would be altogether too dangerous a rule to permit directors in control of a corporation and engaged in a contest for the perpetuation of their offices and control, to impose upon the corporation the unusual expense of publishing advertisements or, by analogy, of dispatching special messengers for the purpose of procuring proxies in their behalf."

The Appellate Division acknowledged in the instant case that " It is obvious that the management group here incurred a substantial amount of needless expense which was charged to the corporation ", but this conclusion should have led to a direction that those defendants who were incumbent directors should be required to come forward with an explanation of their expenditures under the familiar rule that, where it has been established that directors have expended corporate money for their own purposes, the burden of going forward with evidence of the propriety and reasonableness of specific items rests upon the directors (*Godley* v. *Crandall & Godley Co.,* 153 App. Div. 697, 711, mod. 212 N. Y. 121; *Hine* v. *Lausterer,* 135 Misc. 397, 401–402, mod. 232 App. Div. 719, affd. 257 N. Y. 523). The complaint should not have been dismissed as against incumbent directors due to failure of plaintiff to segregate the specific expenditures which are *ultra vires,* but, once plaintiff had proved facts from which an inference of impropriety might be drawn, the duty of making an explanation was laid upon the directors to explain and justify their conduct.

The second ground assigned by the Appellate Division for dismissing the complaint against incumbent directors is stockholder ratification of reimbursement to the insurgent group. Whatever effect or lack of it this resolution had upon expenditures by the insurgent group, clearly the stockholders who voted

to pay the insurgents entertained no intention of reimbursing the management group for their expenditures. The insurgent group succeeded as a result of arousing the indignation of these very stockholders against the management group; nothing in the resolution to pay the expenses of the insurgent group purported to authorize or ratify payment of the campaign expenses of their adversaries, and certainly no inference should be drawn that the stockholders who voted to pay the insurgents intended that the incumbent group should also be paid. Upon the contrary, they were removing the incumbents from control mainly for the reason that they were charged with having mulcted the corporation by a long-term salary and pension contract to one of their number, J. Carlton Ward, Jr. If these stockholders had been presented with a resolution to pay the expenses of that group, it would almost certainly have been voted down. The stockholders should not be deemed to have authorized or ratified reimbursement of the incumbents.

There is no doubt that the management was entitled and under a duty to take reasonable steps to acquaint the stockholders with essential facts concerning the management of the corporation, and it may well be that the existence of a contest warranted them in circularizing the stockholders with more than ordinarily detailed information. As this court said in *Lawyers' Adv. Co. v. Consolidated Ry. Lighting & Refrig. Co. (supra, p. 399)*: " Proper and honest corporate management was subserved by widespread notice to stockholders of questions affecting the welfare of the corporation, and there is no impropriety in charging the latter with any expenses within reasonable limits which were incurred in giving sufficient notice of the special meeting at which the stockholders could be called upon to decide these questions."

What expenses of the incumbent group should be allowed and what should be disallowed should be remitted to the trial court to ascertain, after taking evidence, in accordance with the rule that the incumbent directors were required to assume the burden of going forward in the first instance with evidence explaining and justifying their expenditures. Only such as were reasonably related to informing the stockholders fully and fairly concerning the corporate affairs should be allowed. The concession by plaintiff that such expenditures as were made were reasonable in

amount does not decide this question. By way of illustration, the costs of entertainment for stockholders may have been, and it is stipulated that they were, at the going rates for providing similar entertainment. That does not signify that entertaining stockholders is reasonably related to the purposes of the corporation. The Appellate Division, as above stated, found that the management group incurred a substantial amount of needless expense. That fact being established, it became the duty of the incumbent directors to unravel and explain these payments.

Regarding the $127,556 paid by the new management to the insurgent group for their campaign expenditures, the question immediately arises whether that was for a corporate purpose. The Appellate Division has recognized that upon no theory could such expenditures be reimbursed except by approval of the stockholders and, as has been said, it is the insurgents' expenditures alone to which the stockholders' resolution of ratification was addressed. If *unanimous* stockholder approval had been obtained and no rights of creditors or of the public intervened, it would make no practical difference whether the purpose were *ultra vires* — i.e., not a corporate purpose. (*Kent* v. *Quicksilver Min. Co.,* 78 N. Y. 159; *Capitol Wine & Spirit Corp.* v. *Pokrass,* 277 App. Div. 184, 187, affd. 302 N. Y. 734.) Upon the other hand, an act which is *ultra vires* cannot be ratified merely by a majority of the stockholders of a corporation. (*Continental Securities Co.* v. *Belmont,* 206 N. Y. 7; *Pollitz* v. *Wabash R. R. Co.,* 207 N. Y. 113; *Schwab* v. *Potter Co.,* 129 App. Div. 36; *Davis* v. *Congregation Beth Tephila Israel,* 40 App. Div. 424; Fletcher's Cyclopedia Corporations, §§ 764, 767, 3432, 5795.) In *Schwab* v. *Potter Co.* (*supra,* p. 41) it is said that " it cannot be contended successfully that the minority stockholders may not maintain a suit to enjoin the *ultra vires* acts of their corporation." It was further held not to be a defense that a majority of the stockholders had adopted a resolution of ratification. In *Davis* v. *Congregation Beth Tephila Israel* (*supra*), it was held that a single dissenting member of a corporation might maintain an action to vacate an *ultra vires* agreement. In *Contintental Securities Co.* v. *Belmont* (*supra,* pp. 18–19), the court discussed " The distinction between acts that can and those that cannot be confirmed and ratified " by the stockholders. Quoting from *Bagshaw* v. *Eastern Union Ry. Co.* (7 Hare 114), the court said:

" ' No majority of the shareholders, however large, could sanction the misapplication of this portion of the capital. A single dissenting voice would frustrate the wishes of the majority.' "

The familiar rule, applied in those and other decisions, is that merely voidable acts of the directors of a corporation can be ratified by majority stockholder approval, such as contracts between corporations having interlocking directorates (*Continental Ins. Co.* v. *New York & Harlem R. R. Co.*, 187 N. Y. 225), loans of surplus funds by a trading corporation (*Murray* v. *Smith,* 166 App. Div. 528 — although not in the case of loans to stockholders in violation of the Stock Corporation Law, § 59), and other irregularities involving acts which are neither *ultra vires,* fraudulent or illegal.

In considering this issue, as in the case of the expenses of the incumbents, we begin with the proposition that this court has already held that it is beyond the power of a corporation to authorize the expenditure of mere campaign expenses in a proxy contest (*Lawyers' Adv. Co.* v. *Consolidated Ry. Lighting & Refrig. Co., supra*). That decision is not distinguishable upon the ground that those expenditures were made by the secretary of that corporation without previous authorization by its directors. That point was involved, but this court said: " Thus we have it that the publication of the last three notices was not authorized by the board of directors *and that it could not have been lawfully authorized even if the attempt were made. They bore upon their face sufficient notice to the plaintiff [the printer suing for printing fees] that they were of a character beyond the limit of anything which could be published in behalf of or at the expense of the corporation* " (p. 400; italics supplied). The decision was placed upon both grounds. The statement in the carefully considered opinion written by Judge HISCOCK was not dictum that " it would be altogether too dangerous a rule to permit directors in control of a corporation and engaged in a contest for the perpetuation of their offices and control, to impose upon the corporation the unusual expense ". In that case, and in all of the other decisions which have been cited with the single exception of a Federal district court decision (*Steinberg* v. *Adams,* 90 F. Supp. 604, 606), the question concerned reimbursement of a management group. Moreover, with the exception of an English decision (*Peel* v. *London & North Western Ry. Co.,*

[1907] 1 Ch. 5), all of the appellate court cases which have been cited, and *Steinberg* v. *Adams* (*supra*), were decided under the law of the State of Delaware. The Delaware law contains more latitude than in New York State, as was recognized by Judge RIFKIND in his opinion in *Steinberg* v. *Adams,* who said (p. 607) : " The instant case is concerned with a Delaware corporation and the law of that state determines the scope of the corporation's powers. Both parties, as I have indicated, agree that this case is governed by a less stringent rule " than the ruling by this court in *Lawyers' Adv. Co.* v. *Consolidated Ry. Lighting & Refrig. Co.* (*supra*). We are called upon to decide whether to abandon the rule as previously established in this State and adopt the less strict doctrine of the State of Delaware.

The Delaware cases which are cited consist of *Hall* v. *Trans-Lux Daylight Picture Screen Corp.* (20 Del. Ch. 78), *Empire So. Gas Co.* v. *Gray* (29 Del. Ch. 95), and the Federal cases applying *Delaware* law (*Hand* v. *Missouri-Kansas Pipe Line Co.,* 54 F. Supp. 649, and *Steinberg* v. *Adams, supra*). The *Hand* case (*supra*) merely denied a preliminary injunction to restrain the management from expending corporate funds to hire professional proxy solicitors. There is a difference between hiring solicitors merely to follow up proxy notices so as to obtain a quorum, and a high pressure campaign to secure votes by personal contact. The district court in the *Hand* case did not attempt to decide that aspect of the case, merely ruling that it should be determined after trial, and that no irreparable injury had been shown justifying the issuance of a temporary injunction even if the practice were ultimately held to have been *ultra vires.* In *Empire So. Gas Co.* v. *Gray* (*supra*), it was held that a corporation might sue to enjoin insurgents from soliciting proxies fraudulently by means of a false statement that such solicitation was being made by order of the board of directors. The case most frequently cited and principally relied upon from among these Delaware decisions is *Hall* v. *Trans-Lux Daylight Picture Screen Corp.* (*supra*). There the English case was followed of *Peel* v. *London & North Western Ry. Co.* (*supra*) which distinguished between expenses merely for the purpose of maintaining control, and contests over policy questions of the corporation. In the *Hall* case the issues concerned a proposed merger, and a proposed sale of stock of a subsidiary corporation. These were

held to be policy questions, and payment of the management campaign expenses was upheld.

In our view, the impracticability of such a distinction is illustrated by the statement in the *Hall* case (*supra*, p. 85) that "It is impossible in many cases of intracorporate contests over directors, to sever questions of policy from those of persons". This circumstance is stressed in Judge RIFKIND's opinion in the *Steinberg* case (*supra*, p. 608): "The simple fact, of course, is that generally policy and personnel do not exist in separate compartments. A change in personnel is sometimes indispensable to a change of policy. A new board may be the symbol of the shift in policy as well as the means of obtaining it."

That may be all very well, but the upshot of this reasoning is that inasmuch as it is generally impossible to distinguish whether "policy" or "personnel" is the dominant factor, any averments must be accepted at their face value that questions of policy are dominant. Nowhere do these opinions mention that the converse is equally true and more pervasive, that neither the "ins" nor the "outs" ever say that they have no program to offer to the shareholders, but just want to acquire or to retain control, as the case may be. In common experience, this distinction is unreal. It was not mentioned by this court in *Lawyers' Adv. Co. v. Consolidated Ry. Lighting & Refrig. Co. (supra)*. As in political contests, aspirations for control are invariably presented under the guise of policy or principle. A valiant effort was made in the English case of *Peel v. London & North Western Ry. (supra*, p. 21) to conserve the distinction in the opinion by BUCKLEY, L. J., who said: "Those who are conversant with the affairs of joint stock companies are well aware that cases often arise in which the board in power are anxious to maintain themselves in power, to procure their own re-election, or to drive a policy not really in the interests of the corporation, but for some private purpose of their own, down the throats of the corporators at a general meeting, and in which they issue at the expense of the company circulars and proxy papers for the purpose of attaining that object. When a case of that kind comes before the Court, I sincerely trust that the decision of this Court in this case will not be cited as any authority for justifying the action of the directors."

The main question of " policy " in the instant corporate election, as is stated in the opinions below and frankly admitted, concerns the long-term contract with pension rights of a former officer and director, Mr. J. Carlton Ward, Jr. The insurgents' chief claim of benefit to the corporation from their victory consists in the termination of that agreement, resulting in an alleged actuarial saving of $350,000 to $825,000 to the corporation, and the reduction of other salaries and rent by more than $300,000 per year. The insurgents had contended in the proxy contest that these payments should be substantially reduced so that members of the incumbent group would not continue to profit personally at the expense of the corporation. If these charges were true, which appear to have been believed by a majority of the shareholders, then the disbursements by the management group in the proxy contest fall under the condemnation of the English and the Delaware rule.

These circumstances are mentioned primarily to illustrate how impossible it is to distinguish between " policy " and " personnel ", as Judge RIFKIND expressed it, but they also indicate that personal factors are deeply rooted in this contest. That is certainly true insofar as the former management group is concerned. It would be hard to find a case to which the careful reservation made by the English Judge in the *Peel* case (*supra*) was more directly applicable.

Some expenditures may concededly be made by a corporation represented by its management so as to inform the stockholders, but there is a clear distinction between such expenditures by management and by mere groups of stockholders. The latter are under no legal obligation to assume duties of managing the corporation. They may endeavor to supersede the management for any reason, regardless of whether it be advantageous or detrimental to the corporation but, if they succeed, that is not a determination that the company was previously mismanaged or that it may not be mismanaged in the future. A change in control is in no sense analogous to an adjudication that the former directors have been guilty of misconduct. The analogy of allowing expenses of suit to minority stockholders who have been successful in a derivative action based on misconduct of officers or directors, is entirely without foundation.

Insofar as a management group is concerned, it may charge the corporation with any expenses within reasonable limits incurred in giving widespread notice to stockholders of questions affecting the welfare of the corporation (*Lawyers' Adv. Co.* v. *Consolidated Ry. Lighting & Refrig. Co., supra*). Expenditures in excess of these limits are *ultra vires*. The corporation lacks power to defray them. The corporation lacks power to defray the expenses of the insurgents in their entirety. The insurgents were not charged with responsibility for operating the company. No appellate court case is cited from any jurisdiction holding otherwise. No contention is made that such disbursements could be made, in any event, without stockholder ratification; they could not be ratified except by unanimous vote if they were *ultra vires*. The insurgents, in this instance, repeatedly announced to the stockholders in their campaign literature that their proxy contest was being waged at their own personal expense. If reimbursement of such items were permitted upon majority stockholder ratification, no court or other tribunal could pass upon which types of expenditure were " needless ", to employ the characterization of the Appellate Division in this case. Whether the insurgents should be paid would be made to depend upon whether they win the stockholders election and obtain control of the corporation. It would be entirely irrelevant whether the corporation is " benefited " by their efforts or by the outcome of such an election. The courts could not indulge in a speculative inquiry into that issue. That would truly be a matter of business judgment. In some instances corporations are better governed by the existing management and in others by some other group which supersedes the existing management. Courts of law have no jurisdiction to decide such questions, and successful insurgent stockholders may confidently be relied upon to reimburse themselves whatever may be the real merits of the controversy. The losers in a proxy fight may understand the interests of the corporation more accurately than their successful adversaries, and agitation of this character may ultimately result in corporate advantage even if there be no change in management. Nevertheless, under the judgment which is appealed from, success in a proxy contest is the indispensable condition upon which reimbursement of the insurgents depends. Adventurers are not infrequent who are ready to take advantage

of economic recessions, reduction of dividends or failure to increase them, or other sources of stockholder discontent to wage contests in order to obtain control of well-managed corporations, so as to divert their funds through legal channels into other corporations in which they may be interested, or to discharge former officers and employees to make room for favored new-comers according to the fashion of political patronage, or for other objectives that are unrelated to the sound prosperity of the enterprise. The way is open and will be kept open for stockholders and groups of stockholders to contest corporate elections, but if the promoters of such movements choose to employ the costly modern media of mass persuasion, they should look for reimbursement to themselves and to the stockholders who are aligned with them. If the law be that they can be recompensed by the corporation in case of success, and only in that event, it will operate as a powerful incentive to persons accustomed to taking calculated risks to increase this form of high-powered salesmanship to such a degree that, action provoking reaction, stockholders' meetings will be very costly. To the financial advantages promised by control of a prosperous corporation, would be added the knowledge that the winner takes all insofar as the campaign expenses are concerned. To the victor, indeed, would belong the spoils.

The questions involved in this case assume mounting importance as the capital stock of corporations becomes more widely distributed. To an enlarged extent the campaign methods consequently come more to resemble those of political campaigns, but, as in the latter, campaign expenses should be borne by those who are waging the campaign and their followers, instead of being met out of the corporate or the public treasury. Especially is this true when campaign promises have been made that the expenses would not be charged to the corporation.

Nothing which is said in this opinion is intended as any reflection upon the motives of the insurgent group in instigating this corporate contest, nor upon the management group. Questions of law are involved which extend beyond the persons and the corporation presently before the court. It is the established law of this State that expenditures may be incurred by management limited to informing the stockholders fully and fairly concerning the affairs and policies of the corporation, which may

well include an explanation of the reasons on account of which its policies have been undertaken, nor is there any reason on account of which stockholders who have neglected to sign proxies through apathy may not be solicited so as to insure a quorum, which would ordinarily occur in instances where there is no contest, but beyond measures of this character, the purely campaign expenses of a management group do not serve a corporate purpose, and paying them is *ultra vires*. The same is true of all of the expenses of insurgent stockholders.

The release given to J. Carlton Ward, Jr., by the authority of his codirectors, could not have the effect of discharging liability to which they were otherwise subject upon the theory that it operated to release them as joint tort-feasors.

The judgment appealed from should be reversed so as to direct respondent Fairchild to pay to the corporation the sum of $118,448.78, with appropriate interest, representing the moneys reimbursed to him by the corporation and, upon his default, the respondent, Allis should be required to pay said sum; respondents Fairchild and Allis should be required to pay to the corporation the sum of $9,107.10, with appropriate interest, representing the amount reimbursed to L. M. Bolton by the corporation; and an interlocutory judgment should be entered for an accounting to determine what part of the $133,966, representing expenses incurred by the old board, was improperly charged to the corporation and requiring the respondents Wilson and McComas to pay to the corporation the sum thereof, and the respondents Allis and Fairchild such amounts thereof as were paid out after July 15, 1949, with costs of the action to the plaintiff in all courts.

Conway, Ch. J., and Burke, J., concur with Froessel, J.; Desmond, J., concurs in part in a separate opinion; Van Voorhis, J., dissents in an opinion in which Dye and Fuld, JJ., concur.

Judgment affirmed.