**Carl M. FIELD, as Trustee in Bankruptcy in the Estate of Giant Outlet Market, Inc., Bankrupt, Plaintiff,**

**v.**

**Martin LEW, Bankers Trust Company, First National City Bank of New York, Morrie Lew, Abraham Schneider and Household Finance Corporation, Defendants.**

**Civ. No. 19419.**

United States District Court
E. D. New York.

May 27, 1960.

Jacob Oliner, New York City, for plaintiff.

Moses & Singer, New York City, Arnold A. Jaffe and Bernard Robbins, New York City, of counsel, for defendant, Bankers Trust Co.

Shearman, Sterling & Wright, New York City, John V. Downey, New York City, of counsel, for defendant, First National City Bank of New York.

ZAVATT, District Judge.

This is an action by a trustee in bankruptcy against, *inter alios*, the president of the bankrupt corporation who it is alleged used corporate funds for his own purposes, the bank in which the corporation had its account (Bankers Trust Company) and it is alleged participated in the conversions, and another bank (First National City Bank of New York) that accepted a corporate check and applied the same to the individual indebtedness of the president of the corporation to that bank. The matter is before the court on motions and cross motions for summary judgment which involve only the trustee and the two banks.[1]

---

1. There are three motions:
    1. By the trustee for summary judgment against both banks on claims one and two of the complaint.
    2. By the depository bank, Bankers Trust Co., for dismissal of the complaint. Since the motion is supported by affidavits and depositions, it may be considered as a motion for summary judgment. See Rule 12(c) F.R.Civ.P., 28 U.S.C.A.
    3. By the depository bank for summary judgment on its cross claim against the payee bank, First National City Bank.

The complaint describes three transactions which it is claimed render the defendant banks liable to the trustee. The facts, as they appear in the complaint and the answers thereto, various moving papers with supporting affidavits, depositions, and exhibits, are not in dispute on the material issues, and are as follows:

Giant Outlet Market, Inc., the bankrupt corporation, operated a farmers' market in leased premises at Rockaway Avenue in Brooklyn, New York. Martin Lew was the president and sole stockholder of the corporation. In December 1956, the market burned down. Thereafter, the corporation received about $40,000 on its fire insurance policies, which it deposited in the corporate account maintained with Bankers Trust Company ("Bankers"). At the time the account was opened in December 1955, the corporation filed with Bankers a corporate resolution authorizing Martin Lew as president to transact all corporate business, including the signing and endorsing of all negotiable instruments, and further authorizing Bankers to pay such instruments when so signed.

During July 1957, there occurred the following incidents that constitute the first of the trustee's three claims against the depository bank, Bankers. Lew presented at the appropriate office of Bankers four checks drawn by the corporation and signed by himself as president, payable to Bankers, and received in their stead, upon payment of a $1 fee, four cashier's checks in equivalent amounts payable to four different individuals, two of whom had the last name of "Lew". The checks were for amounts ranging from $1,000 to $2,439.06, and totaled $7,439.06. However, the corporation owed nothing to these four payees. Thereafter, Bankers debited the corporate account in this amount.

The transaction which is the basis of the trustee's second claim against both banks took this form: On July 18, 1957, a check for $1,045, drawn on Bankers by the corporation and signed by Lew as president was sent to The First National City Bank of New York ("FNCB") in part payment of a $6,000 loan that FNCB had made to Lew personally. The check bore on its reverse side Lew's own notation that it was to be credited to his account at FNCB. After normal bank collection procedures, Bankers debited the corporation account.

The trustee's third claim is based on these facts: On August 8, 1957, Lew cashed at Bankers a check drawn by the corporation, by Lew as president, and made payable to himself. The check was in the amount of $16,433.30 and had the practical effect of closing out the account. Thereafter, Lew used this money for his own purposes.

The involuntary petition in bankruptcy was filed January 23, 1958 and the corporation was adjudged a bankrupt February 10, 1958. Creditors have filed claims totalling $4,443.12, and time has elapsed for these, or any other, creditors to file any further claims, except for the United States which may still file a tax claim for $4,004.51.

■ Before discussing the specific claims, it will be helpful to mention some principles that have applicability to all the claims. This action is brought by a trustee in bankruptcy. Section 70, sub. a (5) of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. a (5), vests in the trustee all rights of action reposing in the corporation at the time the bankruptcy petition was filed. In addition, the trustee may sue to set aside transfers of property that are fraudulent as to creditors under either applicable state law or the federal adaptation of the Uniform Fraudulent Conveyance Act. See Bankruptcy Act sections 70, subs. a (4), e, 67, sub. d; 11 U.S.C.A. §§ 110, subs. a (4), e, 107, sub. d. See generally 4 Collier, Bankruptcy 1018–25 (14th ed.). The "applicable state law" is the New York version of the same Uniform Act, Debtor & Creditor Law, §§ 270–281. Although the federal and state versions are slightly different, so far as the facts of this case are concerned, they are equivalent. Therefore, the trustee's rights in property transferred in fraud of creditors are

the same under the various sections of the Bankruptcy Act dealing with such transfers.

The trustee's first claim involves the four cashier's checks. A corporate officer who uses corporate funds for his own purposes may be liable for conversion to the corporation and in bankruptcy to the trustee. Since the officer had no title to the property, transferees of the officer may be similarly liable. However, the general rule of liability does not apply when the officer's acts have been ratified by all the shareholders of the corporation. In that case, the unauthorized acts of the individual become the authorized acts of the corporation, the corporation loses its right of action against the officer, and the corporation, having no right, the trustee in bankruptcy also has no right. See Reif v. Equitable Life Assurance Soc'y, 1935, 268 N.Y. 269, 197 N.E. 278, 100 A.L.R. 55; Barr & Creelman Mill & Plumbing Supply Co. v. Zeller, 2 Cir., 1940, 109 F. 2d 924; Quintal v. Kellner, 1934, 264 N.Y. 32, 189 N.E. 770; Rosenfeld v. Fairchild Engine & Aviation Corp., 1955, 309 N.Y. 168, 180, 128 N.E.2d 291, 51 A.L.R.2d 860 (dissenting opinion); Capitol Wine & Spirit Corp. v. Pokrass, 1st Dep't 1950, 277 App.Div. 184, 98 N.Y.S. 2d 291; John William Bldg. Corp. v. Union Trust Co., 4th Dep't 1939, 256 App. Div. 885, 9 N.Y.S.2d 14; New York Credit Men's Adjustment Bureau, Inc. v. Manhattan Life Ins. Co., City Ct.N.Y.1955, 149 N.Y.S.2d 778. Under the facts of the instant case, the corporation would have no action in conversion against Lew, any of his transferees, or any one participating in the transfer, because Lew as sole stockholder ratified his own actions. It becomes unnecessary at this point to characterize Bankers as either a transferee or a mere participant in the cashier's check transactions, or to investigate thereupon whether it had the status of a holder in due course of a negotiable instrument, which, of course, would be a perfect defense to a charge of conversion. See N.Y. Negotiable Instruments Law § 96.

"Creditors, of course, are not prejudiced by the corporation's acts of ratification." Barr & Creelman Mill & Plumbing Supply Co. v. Zeller, supra, 109 F.2d at page 927. We are led to inquire, therefore, as to the rights of the trustee on this first claim to set aside transactions fraudulent as against creditors. Under both the state and federal law, a transfer is not fraudulent as against creditors if fair consideration is given or if the transferor is not rendered insolvent thereby. The latter "if" is enough to defeat the trustee on this theory because the debiting of $7,439.06 from the corporate account left enough in the account to pay the corporate creditors, including the potential tax claim by the United States.

The trustee tries to avoid this result by alleging that the costs of administrating the bankrupt estate, including attorney's fees, may be as high as $5,000, and since this amount will be a valid claim against the estate, it should be added to the roughly $8,000 in proved or provable claims in determining the question of insolvency. The trustee cites no authority and I can see nothing in the Bankruptcy Act, or in logic, that supports this argument.

The trustee's second claim concerns the repayment of Lew's personal loan to FNCB, for which liability is asserted against both FNCB and Bankers. The trustee relies primarily on the case of Ward v. City Trust Co., 1908, 192 N.Y. 61, 84 N.E. 585, for the conversion claim against FNCB. In that case creditors of a corporation in reorganization brought suit against a bank that had accepted a check payable to the corporation and endorsed over to the bank by the officers of the corporation in repayment of their personal obligation to the bank. There, too, the acts of the officers had been ratified, but, the corporation being insolvent, the rights of creditors were not foreclosed and the issue was whether the bank had taken as a holder in due course. The court held that it did not. The form of the check plus the fact that

it was for a large sum ($125,000) put the bank on notice and it therefore had the duty to inquire. Inquiry would certainly have uncovered the impropriety and its effect on creditors because the bank had its own officers on the board of directors of the corporation. In the instant case, likewise, the form of the check put FNCB on inquiry and the question is what would such an inquiry have discovered. Although the Reif case, supra, indicated that such a question was one of fact for the jury, later New York courts have directed verdicts when inquiry would have discovered that the use of corporate checks for personal purposes was authorized either by express provision, course of action, or ratification, and that creditors were not prejudiced. See John William Bldg. Corp. v. Union Trust Co., supra; New York Credit Men's Adjustment Bureau, Inc. v. Manhattan Life Ins. Co., supra. Since the facts allow but one conclusion that inquiries by FNCB directed either to Bankers or the corporation would have shown that Lew had authority and that the corporation was solvent, summary judgment for FNCB against the trustee would be appropriate.

On this claim against Bankers on this transaction the trustee points to the fact that Bankers stamped "irregularity noted" on this check before it debited the corporate account. From this the trustee says the inference must be drawn that Bankers was aware of Lew's shenanigans and by participating therein, rendered itself liable. For its part, Bankers asserts through a deposition of the assistant manager of the office of Bankers holding the corporate account, that "irregularity noted" in this instance meant nothing more than that this particular check was written on a "sterling" blank, and not on the blank that Bankers provides to its customers. On this motion we may assume that Bankers was on notice that a corporation check was being used to pay the personal obligation of its president Lew. We may

also assume that Bankers thereupon had a duty to investigate, although by the agreement of deposit between the corporation and Bankers, Bankers was absolved from liability under all circumstances. But as we have just seen in the case of FNCB, inquiry would have disclosed nothing to alter Bankers status as holder in due course.

We come now to the trustee's third claim. Liability is asserted against Bankers because it cashed a check for $16,433.30 drawn on it by the corporation, signed by Lew as president and payable to himself. Since insolvency resulted when these funds left the corporate vale, creditors have a claim against transferees who did not give fair consideration. Since corporate property was not transferred to Bankers, it is not the transferee but rather an agent of either Lew or the corporation, and would be liable to the trustee only if it had knowledge of Lew's intentions. The trustee does not contest that if Bankers has the status of holder in due course it would be absolved from liability.

Section 95 of the New York Negotiable Instruments Law protects the holder-in-due-course status of a drawee bank that honors a corporate check made payable to the corporate officer who drew it if the bank has on file a corporate resolution authorizing it to do so. Such a resolution was on file with Bankers. The trustee argues that section 95 only says that the fact that an officer presents a corporate check for payment "shall not be sufficient" to put the bank on inquiry; that the facts of this case disclosed in addition: 1) prior improprieties on the part of Bankers, as evidenced by claims one and two; 2) a check for a large sum that closed out the account. The trustee concludes that the totality of these facts is sufficient to establish a prima facie case of notice to Bankers, so that an adverse summary judgment would be improper.[2] While I

2. On this third claim the trustee has not asked for summary judgment in his favor so that his position in asserting a triable issue of fact is not inconsistent.

agree with the trustee that the protection given banks by section 95 is not absolute, I cannot agree that even the facts that he hopes to prove on trial would present an issue for the jury. My rulings on claims one and two negative any impropriety by Bankers and a jury could not use the occurrences as a basis for imputing bad faith here. The trustee is therefore left with the bald fact that a corporate account was closed by its president. In view of the broad authority given to Lew by the corporation, that is not an unusual occurrence calling for further scrutiny.

We have only to consider one further theory of the trustee. The trustee asserts that section 58 of the New York Stock Corporation Law provides an additional remedy. This section prohibits a declaration of dividends or other distribution of assets that has the effect of impairing capital. The corporation and creditors are given a cause of action "to the full amount of any loss sustained" against the directors who voted such a distribution. Since the capital account of the corporation was set at $26,000 we may assume that all three transactions had the effect of impairing capital. However, I cannot see how this section adds anything that helps the trustee. As successor to corporate rights of action he has no more right under this section than he has as successor to corporate rights under a conversion theory, and for the same reason: the corporation lost its rights because of the ratification by all of its shareholders to the distribution. Cf. Capitol Wine & Spirit Corp. v. Pokrass, supra. Secondly, creditors have a claim only for "loss sustained," but there was no loss to creditors, or the trustee as subrogee, until the third transaction rendered the corporation insolvent, and on this transaction, Bankers status as holder in due course is a complete defense. See Troll v. Chase Nat'l Bank, 2 Cir., 1958, 257 F.2d 825, 828.

In this regard the Barr & Creelman case, supra, is instructive. In reviewing the New York opinions dealing with the "trust fund" doctrine that section 58 embodies, the court said, 109 F.2d at page 928:

"The figures [capital accounts compared with unauthorized disbursements] above quoted are relevant only as bearing on whether the payee should have been deemed on notice. If the recipient of the check would be apt to discover nothing disturbing upon investigation, New York will not invoke the trust fund rule against him. 'The rule of responsibility of the payee of corporate paper is strict and sometimes harsh and is not to be extended. * * * We think that rule should not be stretched so as to apply it to the facts of this case upon the basis of the figurative expression that the capital of a corporation is held in trust for its creditors.' "

There is much more that might be said about the conflicting policy considerations that inhere in these motions. Perhaps it is enough to indicate that a depository bank, at least, is not the watch dog for creditors that the trustee thinks they are or should be.

The defendant Bankers motion to dismiss the complaint against it, is granted. The plaintiff's motion for summary judgment on claims one and two against Bankers and FNCB is denied. Although FNCB has not itself moved for summary judgment, the trustee's motion has brought up all the issues of law, and since a genuine issue of fact does not exist, there is no reason for not granting judgment in FNCB's favor without requiring a formal motion to that effect. See 6 Moore, Federal Practice 2088 (2d ed. 1953). In view of this disposition it is unnecessary to rule on Bankers' motion for summary judgment on its cross claim against FNCB on the trustee's second claim.

This is an order.