is unnecessary where the commission agents are concerned.

(22) Under the relationship between the taxpayer and the commission agents not only does the taxpayer have the right to control and direct such agents as to the results to be accomplished by the work and as to the details and means by which the result is accomplished but the taxpayer does exercise such control to the extent that it sees fit.

(23) Some of the taxes here were collected under the Federal Unemployment Tax Act with respect to commission agents who, during some part of the calendar years involved, were compensated by the taxpayer on a salary basis. The extent to which such agents were paid a salary was, by agreement of the parties, not developed at the trial. The parties have arranged that such figures, if they become necessary, will be agreed upon and submitted by stipulation.

(24) The agents compensated on a commission basis during the years 1943 to 1948, inclusive, were employees of the taxpayer.

(25) The commissions received by the agents based upon a percentage of premiums collected was paid as remuneration for the services which they rendered to the taxpayer during the years 1943 to 1948, inclusive.

### Conclusions of Law

(1) The taxpayer's commission agents were its "employees" within the meaning of Section 1426(d), Internal Revenue Code, 26 U.S.C.A. § 1426(d); the remuneration which they received for their services were "wages" within the meaning of Section 1426(a), Internal Revenue Code; the commission agents were in covered "employment" within the meaning of Section 1426(b), Internal Revenue Code; and the taxes collected under the provisions of the Federal Insurance Contributions Act for the period from January 1, 1943, to September 30, 1948, inclusive, were properly collected.

(2) The commission agents were "employees" of the taxpayer within the meaning of Section 1607(i), Internal Revenue Code, 26 U.S.C.A. § 1607(i), and, to the extent that such commission agents were compensated in part by a salary and in part by commissions, were not in "exempt employment" within the meaning of Section 1607(c) (14), Internal Revenue Code.

(3) The defendant is entitled to judgment with respect to the taxes assessed and collected under the Federal Insurance Contributions Act.

(4) To the extent that the commission agents were compensated during the calendar years in question in part by a salary and in part by commissions the defendant is entitled to judgment with respect to the taxes assessed and collected under the Federal Unemployment Tax Act.

An order may be submitted directing the entry of appropriate judgment accordingly.

**STEINBERG v. ADAMS et al. (POSNER, Intervenor).**

**NEUWIRTH v. ADAMS et al.**

United States District Court
S. D. New York.
May 20, 1950.

Israel Beckhardt, New York City, for plaintiff and plaintiff-intervenor.

Charles Korn, New York City, for Thompson-Starrett Co., Inc.

Berlack & Israels, New York City (Charles Korn, Carlos L. Israels, Henry D.

Shereff, all of New York City, of counsel), for individual defendants.

Leve, Hecht, Hadfield & McAlpin, New York City (C. Lansing Hays, Jr., New York City, of counsel), for defendant William N. Flook.

RIFKIND, District Judge.

Nine motions have been filed and argued in the two companion actions. I shall consider them in the order best calculated to simplify disposition.

I. *Cross-Motions for Summary Judgment in the Steinberg Action.*

The Steinberg action is a stockholder's derivative action for the benefit of Thompson-Starrett Company, Inc. From the amended complaint it appears that the core of the controversy is the propriety of payments made by the corporation to defray the expenses incurred by two contesting parties in connection with an election of directors.

Prior to, and in connection with, the annual meeting of Thompson-Starrett Company held on November 24, 1947, a contest developed between the incumbent directors, whom I shall identify collectively as the Management, and an insurgent group of stockholders. The contest was conducted by printed appeals for proxies addressed to the stockholders, and employment of proxy solicitors and other devices not unusual in such campaigns. Both parties to the contest incurred substantial expenses: the Management $20,110.64, the insurgents $27,755.82.

The insurgents won the contest and elected a new board of directors. In January 1948, according to the complaint, the new board caused the company to reimburse both the Management and the insurgents for these expenditures.[1]

The affidavits disclose, without contradiction, that the action of the new board was reported to the stockholders and, at a meeting held after suit was commenced, the stockholders, by majority vote, ratified the action of the board.

---

1. According to the affidavit of plaintiff's attorney, the new board reimbursed only the insurgents, the Management having defrayed its expenses out of corporate funds while it was still in office.

The complaint seeks judgment in favor of the corporation against directors, both defeated and elected, for the amount of the corporate funds thus expended.

Both plaintiffs and fourteen defendants move for summary judgment on the ground that there is no genuine issue as to any material fact and that the moving parties respectively are entitled to judgment as a matter of law.

The affidavits and arguments have developed one issue very sharply: whether the 1947 contest revolved about matters of corporate policy or merely concerned itself with the retention or displacement of the incumbent office holders and directors. Defendants emphasize that the division was one of policy, especially the relative merit of lump-sum contracts as contrasted with fixed fee contracts in the construction business. Plaintiffs, on the other hand, would have me deduce from reading the proxy material, that the struggle was purely for control of the corporation.

The parties do not differ quite so sharply about the applicable rule of law. They are in apparent agreement that the "ins" may spend corporate funds in a corporate election where the issue is over policy. The defendants maintain that corporate funds may, in such event, also be employed by the "outs" if they win. This the plaintiffs deny.

If the plaintiffs' view of the law is correct they would be entitled to judgment, at least, for the amount paid to the insurgents. Such judgment would, of course, run only against those defendants who were members of the board which authorized the payment. To support its view plaintiffs rely heavily on Lawyers' Advertising Co. v. Consolidated Ry., Lighting & Refrigerating Co., 1907, 187 N.Y. 395, 80 N.E. 199. In that case an advertising agency sought to recover from a corporation the cost of publishing newspaper notices at the instance of directors in connection with a meeting of stockholders. Unlike the instant case, the corporation resisted payment. The claim was rejected because the publication of the notices *had not been authorized by the board of directors* and because "it could not have been lawfully authorized". 187 N.Y. at page 400, 80 N.E. at page 201. The notices were in the form of an "urgent solicitation that these proxies should be executed and returned for use by one faction in its contest, and we think there is no authority for imposing the expense of its publication upon the company." 187 N.Y. at page 399, 80 N. E. at page 201.

The instant case is concerned with a Delaware corporation and the law of that state determines the scope of the corporation's powers. Both parties, as I have indicated, agree that this case is governed by a less stringent rule. "Where the controversy is concerned with a question of policy as distinguished from personnel of management and the stockholders are called upon to decide it, it would seem quite clear that the incumbent directors may with perfect propriety make such expenditures from the corporate treasury as are reasonably necessary to inform the stockholders of the considerations which the directors deem sufficient to support the wisdom of the policy advocated by them and under attack; and in the same communications which the directors address to the stockholders in support of their policy they may solicit proxies in its favor." Hall v. Trans-Lux Daylight Picture Screen Corp., 1934, 20 Del.Ch. 78, 171 A. 226, 227. Hand v. Missouri-Kansas Pipe Line Co., D.C.Del.1944, 54 F.Supp. 649; Empire Southern Gas Co. v. Gray, Del.Ch.1946, 46 A.2d 741, 744; See Peel v. London and North Western R. R. Co., 1907, 1 Ch.Div. 5; In re Zickl, Sup.1947, 73 N.Y. S.2d 181.

None of these cases authorizes reimbursement of the successful insurgents. All were concerned with expenditures authorized and incurred by the incumbent board. No case has been called to my attention which, in a "policy" controversy, either allowed or disallowed the reimbursement of an insurgent group for the expenses incurred by it in bringing about a change of management. My own choice is to draw no distinction between the "ins" and the successful "outs". I see no reason why the stockholders should not be free to reimburse those whose expenditures succeeded in ridding a corporation of a policy

frowned upon by a majority of the stockholders. Once we assert that incumbent directors may employ corporate funds in policy contests to advocate their views to the stockholders even if the stockholders ultimately reject their views, it seems permissible to me that those who advocate a contrary policy and succeed in securing approval from the stockholders should be able to receive reimbursement, at least where there is approval by both the board of directors and a majority of the stockholders. An analogy may be found in the reimbursement of the successful stockholder who brings a derivative action for the benefit of the corporation. There he is reimbursed regardless of the views of the stockholders.

Assuming the contest in the instant case to have been concerned with "policy", I would hold that plaintiffs are not entitled to judgment even for the expenditures incurred by the insurgents, unless these were unreasonable.

Plaintiffs suggest, however, that this was not a contest over policy. From the circulars addressed to the stockholders by both sides they would have me so deduce. Defendants urge that the same circulars lead to the inference that policy and not personnel was the crux of the contest. The simple fact, of course, is that generally policy and personnel do not exist in separate compartments. A change in personnel is sometimes indispensable to a change of policy. A new board may be the symbol of the shift in policy as well as the means of obtaining it. The circulars themselves do not leave the mind with that freedom from the "slightest doubt" which the cases require before summary judgment can be granted. Arnstein v. Porter, 2 Cir., 1946, 154 F.2d 464.

That conclusion is not made invalid by the circumstance that here both parties have moved for summary judgment and that both parties rely upon the circulars as the primary evidence. This is so because defendants by their affidavits have placed the circulars in a context of a policy controversy the existence of which the plaintiffs deny. But even if there were no such additional disputed evidence, summary judgment would still not be available. The plaintiffs' motion can not be granted because the circulars do not overwhelmingly drive me to the inference that "policy" considerations were absent from the contest. The defendants' motion can not be granted because the same circulars do not lead with certainty to the inference that "policy" considerations were present.

A trial judge will not be hampered by these restraints. He has a working tool not available to the motion judge. He employs the "burden of proof" to decide issues. Whoever has the burden of proof will lose if he fails to sustain it. Here, however, if I should decide that plaintiffs have not sustained the burden of proof, it does not follow that defendants can get summary judgment. They can not get summary judgment, as distinguished from judgment after trial, unless they meet the "slightest doubt" test. That they have not accomplished.

This, I hope, will help lay the ghost of an assumption which seems to be common at the bar that once both parties move for summary judgment the court is bound to grant it to one side or the other. The law is otherwise. Associates Discount Corporation v. Crow, 1940, 71 App.D.C. 336, 110 F.2d 126; cf. Steiner v. U. S., D.C. 1941, 36 F.Supp. 496.

## II. Motion of Defendant Flook for Summary Judgment in the Steinberg Action and Plaintiffs' Cross Motion.

Defendant Flook was a director of Thompson-Starrett Company during the 1947 contest. He was not re-elected at the annual meeting of November 24, 1947. There is nothing to indicate that he had any share in the decision of the new board to pay the expenses of the insurgents. What has been said under section I explains why neither plaintiffs nor defendant Flook can have summary judgment. Flook, however, is entitled to an order, under Federal Rules of Civil Procedure rule 56(d), 28 U.S.C.A., which would dispose of any claim against him for moneys paid out to the insurgents.

*III. Motion for Summary Judgment by Defendants Broad, Van Raalte and Thompson-Starrett Company in the Neuwirth Action.*

This motion is denied for the reasons stated in section I.

*IV. Motion to Dismiss the Steinberg Action for Failure of Plaintiffs to Comply with Rule 23(b).*

Fourteen defendants have joined in this motion to dismiss on the ground that the complaint does not particularize the efforts of the plaintiffs to secure action from the stockholders. The complaint assigns these reasons for failure to have recourse to the stockholders: (1) under Delaware law the stockholders can not sue for the corporation nor can they compel directors to sue; (2) the stock is widely distributed and actively traded.

The rule requires a showing of recourse to stockholders only "if necessary". Recourse to stockholders is necessary only when stockholder action is feasible. In the instant case the complaint alleges that the defendants committed an illegal act which could not, under Delaware law, be ratified by the stockholders. Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 1942, 130 F.2d 1016, 1022. On the face of the complaint ratification being impossible, there was no necessity to state why efforts were not made to contact the stockholders in order to test the possibility of ratification. Insofar as the motion is addressed to the face of the complaint it must be denied.

The motion is supported by affidavit and perhaps should be regarded as going behind the face of the complaint. But the disposition is not changed thereby. It is undisputed that the stockholders have ratified the action of the board of which the plaintiffs complain. If that were sufficient to validate the defendants' act I should have granted the defendants' motion for summary judgment and thus dispose of the action on the merits. For reasons already stated the action was not ripe for such a decision. Neither is it ripe for a decision on this motion for the reason that the issue presented by the motion is one of the very issues which must be decided by a trial.

This motion is, therefore, denied.

*V. Motion by Defendants Broad and Van Raalte to Dismiss the Neuwirth Action for Plaintiff's Failure to Comply With Rule 23(b).*

This motion is denied for the reasons stated in section IV.

*VI. Motion by Defendant Flook to Dismiss the Steinberg Action for Plaintiff's Failure to Comply With Rule 23(b).*

This motion is denied for the reasons stated in section IV.

*VII. Motions by Thompson-Starrett Company to Require the Furnishing of Security for Costs in Both Actions Pursuant to Section 61-b of the New York General Corporation Law, McK.Unconsol.Laws, c. 23.*

 The moving affidavits show the facts necessary to support such an application.

The motion is granted. Security in the amount of $2,500 will be furnished in each action.