WILLIAM ROSENFELD, on Behalf of Himself and All Other Stockholders of FAIRCHILD ENGINE AND AIRPLANE CORPORATION, Similarly Situated, Appellant, *v.* FAIRCHILD ENGINE AND AIRPLANE CORPORATION et al., Respondents, et al., Defendants.

Second Department, May 24, 1954.

*Abraham Marcus, Alan J. Stein* and *William Rosenfeld,* in person, for William Rosenfeld, appellant.

*Jacquelin A. Swords* and *William K. Zinke* for Sherman M. Fairchild, respondent.

*Harold R. Medina, Jr.,* for Webb Wilson and another, respondents.

*Samuel J. Silverman* and *Jay H. Topkis* for James A. Allis, respondent.

MURPHY, J. This is a stockholders' derivative action to recover from past and present directors of the Fairchild Engine and Airplane Corporation moneys paid by the corporation to defray expenses of rival slates of candidates for election as its directors. The plaintiff is a lawyer, who, with his attorney in this action, has collaborated in many suits of this character. The plaintiff

owns 25 shares of the 2,308,817 shares of the corporation. The total number of shareholders is 10,245, of whom 750 have joined the plaintiff in this action.

On July 13, 1949, at the annual meeting of stockholders of the corporation, a slate of directors sponsored by the defendant Sherman M. Fairchild was elected, defeating a slate of directors sponsored by the then management headed by the chairman of the board J. Carlton Ward, Jr., also a named defendant herein. This election climaxed a protracted, vigorous, and expensive campaign on the part of both the management and the Fairchild groups. The stockholders were surfeited with a barrage of letters and literature soliciting their support for the rival slates and expounding the virtues and deficiencies of the respective candidates for directors. Proxy solicitors and legal counsel were engaged by both sides at considerable cost. The management group's expenses totaled $133,966. The Fairchild group's expenses amounted to $127,556. The corporation paid both of these sums, or a total of $261,522. Of the $133,966 expended by the management group, $106,131 was paid by the corporation while the incumbent directors remained in office and the remainder, $27,835.52, was paid by the corporation after the new board came into control.

The $127,556 expended by the Fairchild group, which won the election, was paid at the direction of the new board, subject to approval by the stockholders who, on April 26, 1950, by a vote of 1,451,842 to 90,927 shares, approved such reimbursement out of corporate funds.

The plaintiff seeks, on behalf of the corporation, to recover from the defendant directors, past and present, the entire sum of $261,522, less what is called the ordinary and usual cost of calling the stockholders' meeting and holding the election. The plaintiff appeals from a judgment dismissing his complaint on the merits after trial.

Only four of the twenty individual defendants were served. These were O. Parker McComas, Webb Wilson, Sherman M. Fairchild and James A. Allis. The action was severed as to the other defendants. McComas and Wilson were two of the old directors who were defeated. Plaintiff seeks recovery from them of the $133,966 expenses paid by the corporation, less usual expenses incident to the stockholders' meeting, on the ground that the expenditure was not for a corporate purpose, but rather was incurred on behalf of the individuals to elect them to office. These two defendants, on the other hand, maintained

that the entire $133,966 was a legitimate corporate obligation, spent to enlighten the stockholders regarding the accomplishments of the management and the advantages of its policies and in an appeal to re-elect directors supporting these policies. They contend that their campaign was a benefit to the stockholders. These two former directors, McComas and Wilson, also rely on a general release given by the corporation to the defendant Ward following the defeat of the old board. McComas and Wilson assert that the effect of this release was to relieve them from any possible liability as alleged joint tort-feasors with Ward.

Recovery is sought against Fairchild, the leader of the victorious group, of the sum of $27,835.52 which the new board caused the corporation to pay of the $133,966 expended by the old board in its campaign for re-election. Demand is made that Fairchild also pay to the corporation $127,556, representing the expenditures of the Fairchild group to elect themselves, $118,448.78 of which sum represents a reimbursement to Fairchild by the corporation for sums spent by him and $9,107.10 to the named defendant Bolton for sums allegedly expended by him in the effort to elect the Fairchild group. Fairchild contends that the expenses incident to electing the new board was a distinct benefit to the corporation in enlightening the stockholders as to faulty policies of the old management and prospects of improvement in the event that the Fairchild group was elected. He points to a ratification by the stockholders by a vote of better than fourteen to one of the reimbursements. Plaintiff asserts, on the other hand, that nothing short of a unanimous vote of all shares would suffice to ratify reimbursement of this expense because such reimbursement was, in effect, a gift on the part of the corporation. Plaintiff also argues that the notice of the meeting at which the stockholders ratified the reimbursement to Fairchild and Bolton was misleading in that it would lead them to believe that the expense was that incurred after formation of a so-called stockholders' committee, whereas part of the expense predated the formation of the committee.

The remaining defendant served, James A. Allis, has a unique status. He was a member of the old board and was on both slates, that of the management and of the " outs ". Plaintiff concedes that Allis disassociated himself from the old board early in the development of the contest and did not participate in causing the expenditures under attack; accordingly plaintiff seeks recovery from Allis only of that part of the old board's

expense which was paid at the direction of the new board, the sum of $27,835.52. Recovery is also sought against Allis, however, with respect to the sum of $118,448.78 paid to Fairchild, only if Fairchild defaults, and for the sum of $9,107.10 paid to Bolton. Allis adopts the contention of the codefendants with respect to the propriety of payment by the corporation of expenses of both sides and also argues that as a candidate on both slates he had no personal interest and his judgment in voting for the expenditures was within his province as director and cannot be assailed even if it was unwise. (*Blaustein* v. *Pan American Petroleum & Transp. Co.,* 263 App. Div. 97.)

## Matter of Policy Involved

There can be no doubt that there was a serious and substantial difference of opinion between the Fairchild group and the Ward group regarding the management of the corporation. Fairchild personally had a huge stake in the company. He was its founder and upon his resignation as chairman of the board in 1946, he retained 96,000 shares of the company stock and was its largest stockholder. Ward had been executive head of the organization for several years during which it did its greatest volume of business. He had a lucrative contract with the corporation which contract was one of the main points of contention between him and Fairchild. These differences went deep into the policies of the company and were smoldering for a long time before culminating in open warfare.

The Fairchild group scored a complete victory at the meeting of July 13, 1949, climaxing the long and bitter struggle between the two groups. The Fairchild group received 1,191,217 against 622,186 shares for the management slate, an almost two to one triumph.

The plaintiff relies heavily on *Lawyers' Adv. Co.* v. *Consolidated Ry. Lighting & Refrig. Co.* (187 N. Y. 395). That case, however, is readily distinguishable from the one before us. That was not an action based on waste of corporate funds, but rather turned on the question of the power of the secretary of the company to incur expenses on its behalf which had not been authorized by the directors. Furthermore, in that case there is present no approval of the questioned expenses by the stockholders, while in the case before us approval of the election expenses by an overwhelming vote of the stockholders is a basic consideration.

The court did indicate in *Lawyers' Adv. Co.* v. *Consolidated Ry. Lighting & Refrig. Co.* (*supra*, p. 399) that management may at corporate expense mail proxies "accompanied by a brief circular of directions", but that the expense of making partisan appeals and of dispatching persons to solicit proxies was not such reasonable expenditure for corporate purposes as to render the corporation liable therefor.

In *Hall* v. *Trans-Lux Daylight Picture Screen Corp.* (20 Del. Ch. 78) an injunction was sought to restrain the corporation from paying any money for a proxy contest in connection with the annual meeting of stockholders and to order the directors to pay all sums theretofore paid by the corporation. The court held that where the controversy is concerned with a question of policy as distinguished from personnel of management, the incumbent directors may make such corporate expenditures as are reasonably necessary to inform the stockholders of the considerations which the directors deem sufficient to support the wisdom of the policy advocated by them and under attack, and to solicit proxies in the same communications. The court's conclusion was: " I gather the principle from these authorities to be that where reasonable expenditures are in the interest of an intelligent exercise of judgment on the part of the stockholders upon policies to be pursued, the expenditures are proper; but where the expenditures are solely in the personal interest of the directors to maintain themselves in office, expenditures made in their campaign for proxies are not proper." (P. 84.)

The Delaware court cited *Peel* v. *London & North Western Ry. Co.* ([1907] 1 Ch. Div. 5), wherein the three Lord Justices who sat in the case determined that directors may expend corporate money to advise the stockholders of their position with respect to policy and to urge the election of those who will support such position. It was in fact held in the *Peel* case that it was the duty of the directors to advise the stockholders on a matter of policy.

A case similar to the facts in the present case is *Steinberg* v. *Adams* (90 F. Supp. 604, 606). There, too, in a contest between " ins " and " outs " for control of the board of directors of a Delaware corporation, the insurgents won and elected a new board. It caused the company to reimburse both management and insurgents for the expenses incurred by each side in the proxy struggle. The court stated that: " The contest was conducted by printed appeals for proxies addressed to the stockholders, and employment of proxy solicitors and other devices

not unusual in such campaigns. Both parties to the contest incurred substantial expenses: the Management $20,110.64, the insurgents $27,755.82.''

In the *Steinberg* case, the reimbursement by the new board was reported to the stockholders, and, at a meeting held after the derivative action was commenced to recoup the expenditures, the stockholders by a majority vote ratified the action of the new board. Both parties agreed that if the incumbent board spent the corporate funds in an issue over policy, they were entitled to do so. The plaintiff contended, however, that the contest was one of personnel seeking control. Judge RIFKIND stated (p. 608): '' The simple fact, of course, is that generally policy and personnel do not exist in separate compartments. A change in personnel is sometimes indispensable to a change of policy. A new board may be the symbol of the shift in policy as well as the means of obtaining it. The circulars themselves do not leave the mind with that freedom from the ' slightest doubt ' which the cases require before summary judgment can be granted.''

In upholding the reimbursement by the corporation of expenses incurred by the new board, which reimbursement had been ratified by a majority of the stockholders, the court stated (pp. 607–608): '' No case has been called to my attention which, in a ' policy ' controversy, either allowed or disallowed the reimbursement of an insurgent group for the expenses incurred by it in bringing about a change of management. My own choice is to draw no distinction between the ' ins ' and the successful ' outs '. I see no reason why the stockholders should not be free to reimburse those whose expenditures succeeded in ridding a corporation of a policy frowned upon by a majority of the stockholders. Once we assert that incumbent directors may employ corporate funds in policy contests to advocate their views to the stockholders even if the stockholders ultimately reject their views, it seems permissible to me that those who advocate a contrary policy and succeed in securing approval from the stockholders should be able to receive reimbursement, at least where there is approval by both the board of directors and a majority of the stockholders. An analogy may be found in the reimbursement of the successful stockholder who brings a derivative action for the benefit of the corporation. There he is reimbursed regardless of the views of the stockholders.'' Thus it was held that management was entitled to expend corporate moneys to state its position on a matter of policy in an election contest and that the '' outs ''

also are entitled to be reimbursed if such reimbursement is ratified by a majority of the stockholders.

Applying these general principles to the case at hand, it appears that the management group was entitled at corporate expense to present its interpretation of the intracompany struggle to the stockholders. It is obvious that the management group here incurred a substantial amount of needless expense which was charged to the corporation, nevertheless the complaint was properly dismissed because: (1) of the failure of the plaintiff to urge liability as to specific expenditures, and (2) stockholder ratification of reimbursement by the corporation to the Fairchild group of similar expenditures.

Plaintiff fails to shed any light as to what sums were properly or improperly spent. Even though the plaintiff testified that he objected to the amount of money spent under various categories and not to the categories themselves, his attorney stated that the charges were fair and reasonable but denied " they were legal charges which may be reimbursed for."

With regard to the claim that Fairchild and Allis are liable for the $27,835.52 paid by the corporation upon authority of the new board as part of the expenses of the old board, recovery is defeated because of (1) the failure of the plaintiff to segregate unwarranted from unreasonable expenses, and (2) the effect of the ratification by the stockholders of the new board's expenditures. In addition there is a line of cases that absolve a director from liability even though he voted in favor of expenses which resulted in unwarranted gain by other directors, if he did so in good faith and without profit to himself. Though the soundness of this principle might seem questionable, it seems to be established. Thus, where a director is voted excessive compensation, only he who receives the excess is liable for its return. As we said in *Matter of Horowitz* (272 App. Div. 942): " A director who has not received any part of such compensation, even though he may have voted for the resolution, may not be directed to return to the corporation any part of the excessive compensation paid to others. (*Carr* v. *Kimball,* 153 App. Div 825, 842, affd. 215 N. Y. 634.) " Although the order of this court in *Matter of Horowitz* (*supra*) was reversed on another ground (297 N. Y. 252), the Court of Appeals assumed (p. 258), on the authority of the *Carr* case, the foregoing quotation to be a correct statement of law.

Fairchild and Allis voted in good faith to pay the balance of the charges already incurred by the old board and did not per-

sonally profit thereby. They come within the province of the authority of the *Horowitz* and kindred cases.

As noted above, the plaintiff also seeks to hold defendants Fairchild and Allis liable to the corporation for its reimbursement of the sum of $127,556 expended by the Fairchild group in the election contest. Fairchild's expenses are in the same general categories as those of management. They consist of legal and consulting fees, expenses for proxy solicitors, preparation and printing of proxy materials, addressing and mailing, telephone and telegraph charges and charges for transportation and hotel.

We have already seen that the reimbursement to Fairchild and Bolton was approved by the stockholders of the company by a vote of better than fourteen to one.

In seeking judgment against Fairchild and Allis plaintiff presents three contentions (1) that the directors had no power to reimburse the " outs " for their expenses, (2) that the notice to stockholders of the proposed ratification was insufficient, and (3) that reimbursement of these expenses was a gift to Fairchild and Bolton and nothing less than a unanimous ratification by the stockholders as opposed to a majority could serve to authorize it.

The expenses of those who are seeking to displace the management should not be reimbursed by the corporation except upon approval by the stockholders. Alleged benefits should not be thrust upon a corporation by persons outside of the management at a price which the corporation is required to pay irrespective of the stockholders' appraisal of such benefits. The " outs " should be required to pay their own campaign expenses unless the stockholders decide to the contrary. The " outs " are under no duty, as is management, to set forth the facts, with corresponding obligation of the corporation to pay for such expense.

The " outs " in this case clearly were not entitled to reimbursement in the absence of stockholder approval, but that approval was given by an overwhelming majority.

With respect to the plaintiff's contention that the reimbursement of Fairchild and Bolton was in the nature of a gift, a corporation is owned by its stockholders and their majority vote is sufficient for approval of any irregular or voidable act. As stated in *Pollitz* v. *Wabash R. R. Co.* (207 N. Y. 113, 128):
" They may at each authorized election entirely change the directorate and may at any time keep the directors within the line of faithful administration by an appeal to a court of equity

or repudiate their acts which are *intra vires* of them, but voidable. In case the defendants establish, under the defenses, that the entire proceeding was conducted in good faith and in furtherance of the purposes of and with fairness to the Wabash Company, its result was voidable, not void, and could have been ratified by the stockholders through a duly had majority vote."
Even though Fairchild stated up to the time of the formation of the committee that he would defray the expenses, he did not thereby foreclose the possibility that the stockholders in their discretion would reimburse him.

Finally, it is argued by plaintiff that the notice to the stockholders of the matter of reimbursement of Fairchild and Bolton was insufficient. Of course, if the notice did not fairly apprise stockholders of the scope of the matter, it could not be voted upon at the meeting (*General Investment Co.* v. *American Hide & Leather Co.*, 97 N. J. Eq. 214, 225, 226; *Berendt* v. *Bethlehem Steel Corp.* 108 N. J. Eq. 148, 151). The gist of the argument is that the notice is so worded as to give the impression that all of the expenses involved are those incurred by the Fairchild committee, and that those of Fairchild himself and of Bolton prior to formation of the committee are not involved. But the notice of the annual meeting itself states that action is to be taken on the matter of approval of reimbursement to Fairchild and Bolton of expenses incurred by them in opposing the Ward contract and in connection with the proxy contest. This statement clearly includes all expenditures of Fairchild and Bolton.

This ratification did more than settle the question of the expenditures of the " outs "; it reflects on the propriety of similar payments on the part of the " ins ". It is the owners of the corporation, the stockholders, who should fashion the standard of the legitimacy of payments out of the corporate treasury for expenses incurred in proxy struggles. It is their corporation and an alert, articulate ownership is in a position to settle these matters far more effectively than can a judicial tribunal.

In view of the foregoing conclusions it is not necessary to determine whether McComas and Wilson were relieved from liability by virtue of the general release given to Ward.

The judgment should be affirmed, without costs.

WENZEL, Acting P. J., MACCRATE, SCHMIDT and BELDOCK, JJ., concur.

Judgment unanimously affirmed, without costs.