**SELAMA-DINDINGS PLANTATIONS, LTD., Plaintiff,**

v.

**Frank W. DURHAM et al., Defendants.**

**No. 4730.**

United States District Court
S. D. Ohio, W. D.
March 20, 1963.

S. Arthur Spiegel and James Q. Doran, of Cohen, Baron, Druffel & Hogan, Cincinnati, Ohio, for plaintiffs.

Robert P. Goldman and Reuven J. Katz, of Paxton & Seasongood, Cincinnati, Ohio, for defendants.

**WEINMAN, Chief Judge.**

This case, a shareholders' derivative action, has been tried to the Court without a jury. Before stating its Findings of Fact and Conclusions of Law, the Court deems it advisable to briefly review the history of the case.

On January 4, 1961, plaintiff, Selama-Dindings Plantations, Ltd. (sometimes hereinafter referred to as Selama-Dindings), on behalf of itself and for the benefit of and on behalf of The Cincinnati Union Stock Yard Company, a corporation (sometimes hereinafter referred to as defendant corporation), and all the shareholders of The Cincinnati Union Stock Yard Company who may be similarly situated, filed a Complaint against seven individual defendants, joining, as required by law, The Cincinnati Union Stock Card Company. In its first cause of action plaintiff alleges that the individual defendants, directors of the defendant corporation, caused The Cincinnati Union Stock Yard Company to sell certain real estate for $110,000.00 when plaintiff, through its representatives, had offered $115,000.00 for the property. For its second cause of action plaintiff alleges that the defendant directors caused The Cincinnati Union Stock Yard Company to expend certain funds, about $15,000.00, for improper purposes, to-wit: to furnish to shareholders inflammatory and libelous material defaming the character and personality of Charles E. King, Martin W. Glotzer and their associates. These funds, plaintiff alleges, were used to investigate certain transactions involving plaintiff, Charles E. King, Martin W. Glotzer and their associates, unrelated to defendant The Cincinnati Union Stock Yard Company, in order to hinder plaintiff from purchasing shares of defendant corporation and to aid the defendant directors in procuring the proxies of shareholders of defendant corporation. Plaintiff further alleges that the expenses so incurred were for the benefit of the defendant directors so that they might perpetuate themselves in power by controlling a majority of the Board of Directors and

thereby continue the employment of certain defendants in the management of defendant corporation.

Plaintiff, in its prayer, seeks judgment on behalf of The Cincinnati Union Stock Yard Company and all of its shareholders against the defendant directors in the sum of $5,000.00 upon the first cause of action and judgment in the sum of $15,000.00 upon the second cause of action. Plaintiff further prays that the damages which defendant corporation may have sustained by reason of the matters and things heretofore set forth, in addition to those heretofore prayed for, may be ascertained and determined and that all the defendant directors be directed to pay such damages to defendant The Cincinnati Union Stock Yard Company to the extent that they gained by such damage or participated in causing such damage. Plaintiff further prays that it be awarded a reasonable allowance for attorneys' fees, expenses and costs in the prosecution of this action.

On January 25, 1961, defendants filed their Answer and Counterclaim which was superceded, on November 1, 1961, by an Amended Answer and Counterclaim. The defenses to the Complaint are, stated briefly:

1. That plaintiff is a corporation transacting business in the State of Ohio but has failed to file with the Secretary of the State the necessary documents and to pay the fees in order to qualify for the purpose of doing business in the State of Ohio and therefore, according to the provisions of the Revised Code of Ohio applicable to foreign corporations doing business in the State of Ohio, is not qualified to institute or maintain this action.

2. That plaintiff failed to make a demand upon defendant corporation or its Board of Directors to bring the action to recover the alleged wrongful payments from the defendant directors and further that plaintiff failed to make demand on the directors to call a meeting to submit the claims of plaintiff to the shareholders of defendant corporation and plaintiff could have submitted and did not submit the same for their action to the shareholders before or at the approaching annual meeting.

3. That the action is not brought on the behalf of or for the benefit of The Cincinnati Union Stock Yard Company and is not brought by plaintiff in good faith but as a part of the plan of plaintiff in conducting its campaign to purchase the outstanding shares of defendant corporation.

4. That Charles E. King did not submit a bona fide offer to the Board of Directors on behalf of plaintiff to purchase the real estate for $115,-000.00.

5. That at all times the individual defendants administered the affairs of the corporate defendant in a proper, careful, useful and prudent manner.

As a Counterclaim against plaintiff, the defendants allege that plaintiff has conducted its campaign to obtain control by "impermissible and illegal methods and has caused the company to incur exceptional expenses as a result thereof, for which the Company seeks an injunction and punitive damages."

On January 16, 1961, defendants filed a motion for summary judgment on the same grounds as alleged in the Answer as its first defense, i. e., that the plaintiff corporation has been and is doing business in the State of Ohio and it has failed to qualify for doing business in the State of Ohio, and according to Ohio Revised Code Section 1703.29(A) may not maintain an action in this Court. On July 26, 1961, this Court denied defendants' motion for summary judgment for the reason that material questions of fact existed and stated that the facts concerning plaintiff's capacity to bring this action must be developed at the trial or at a special hearing to determine these facts.

On January 19, 1962, plaintiff filed its Reply to the Counterclaim in which plain-

tiff denies that the amount in controversy between it and defendants is in excess of $10,000.00, exclusive of interest and costs. Plaintiff further denies that the campaign to obtain control of The Cincinnati Union Stock Yard Company has been and is being conducted by impermissible and illegal methods, or has injured defendant corporation and plaintiff further denies that it has committed any wrongful acts which have caused any damage to defendant corporation.

On December 20, 1962, the Court, having been advised that in the ordinary course of events a shareholders' meeting of The Cincinnati Union Stock Yard Company would take place on March 26, 1963, entered an Order prohibiting any meeting, whether regular or special, of the shareholders of defendant corporation until this case was decided or until further Order of the Court.

The trial of this case commenced before the Court on April 30, 1962. The Court having considered the pleadings and having heard the evidence and having considered the behavior of the witnesses on the stand, their manner of testifying and the reasonableness and probability of their testimony hereby makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiff, Selama-Dindings, is a Hawaiian Corporation whose principal place of business is in Honolulu, Hawaii; maintaining the office of its Executive Committee at Chicago, Illinois. Plaintiff is registered as a closed-end non-diversified investment company under the Federal Investment Company Act of 1940.

Charles E. King, Martin W. Glotzer and Richard E. Turner are members of the Board of Directors and of the Executive Committee of Selama-Dindings. Edward Slovick is an attorney who has, at various times, though not in this law suit, represented Selama-Dindings.

As hereinafter used, "plaintiff's representatives" may include any number of the aforementioned persons and "the minority directors" denotes plaintiff's representatives who were, at the time referred to, members of the Board of Directors of defendant corporation. The minority directors, and the dates of the shareholders' meetings at which each was elected a director of defendant corporation are: Charles E. King and Martin W. Glotzer, March 22, 1960; Charles E. King, Martin W. Glotzer and Richard E. Turner, March 28, 1961; and Charles E. King, Martin W. Glotzer, Richard E. Turner and Edward Slovick, March 27, 1962. However, the election of Edward Slovick is contested by the defendant directors.

2. At the date of filing the Complaint, each of the individual defendants, Frank W. Durham, William A. Mitchell, Otto V. Moesch, Murray Seasongood, William B. Stone, W. Craig Weaver, Emil E. Work, was a citizen of the State of Ohio and a member of the Board of Directors of defendant corporation. Murray Seasongood is also the senior member of the law firm of Paxton and Seasongood, which firm represents defendant corporation and each of the individual directors in this action. However, Frank W. Durham and W. Craig Weaver are no longer directors of defendant corporation.

3. The principal business of defendant corporation is and always has been the conducting of a public stock yard located in Cincinnati, Ohio. It owns, in addition to stock yard facilities, an office building, the stock of a hotel corporation and other real estate not used or useful for stock yard purposes.

4. Plaintiff, on May 18, 1962, in open Court moved to dismiss defendants Frank W. Durham, who is Vice-President and Secretary of defendant corporation, and Otto V. Moesch, who is Chairman of the Board of Directors and President of defendant corporation, for the reason that the services of these men are of vital importance to defendant corporation and therefore, they should not be required to expend further time in the trial of this action. The Court granted the motion and filed an Order to this effect on June 5, 1962, reserving the right to determine the allocation of costs with reference to

these two defendants upon the final entry in this matter.

5. As to the Complaint, the matter in controversy exceeds, exclusive of interest and costs, the sum of $10,000.00 and this action is not a collusive one to confer jurisdiction on this Court which it would not otherwise have. Also, plaintiff was a shareholder in The Cincinnati Union Stock Yard Company at the time of the transactions of which it complains.

6. As to the Counterclaim, the matter in controversy exceeds, exclusive of interest and costs, the sum of $10,000.00.

7. Plaintiff has proved by a preponderance of the evidence that it is engaged solely in interstate commerce and is not transacting intrastate business in the State of Ohio.

8. Plaintiff made demand upon defendant corporation to institute legal proceedings based upon the first cause of action of the Complaint (Plaintiff's Exhibit A–36) but defendant corporation declined to institute legal proceedings as requested (Defendants' Exhibit 194).

9. Plaintiff did not make demand upon the corporation to institute legal proceedings based upon the second cause of action of the Complaint. However, the Court finds that such a demand would have been futile. It should also be noted that in a pretrial conference, counsel for plaintiff and counsel for defendants agreed that such a demand would have been futile.

10. In the summer of 1959, plaintiff became interested in defendant corporation, and through its President, Charles E. King, began purchasing stock of defendant corporation.

11. In July of 1959, plaintiff requested from defendant corporation an up to date list of its shareholders (Plaintiff's Exhibit A–2 and Defendants' Exhibit 87) and such a list was subsequently furnished.

12. In November of 1959, plaintiff made a public offering to shareholders of defendant corporation to purchase 14,300 shares of its stock at $18.00 a share; this offer to remain open during the month of November. Following the publication of this offer, certain defendant directors met with representatives of Cincinnati Transit Company at the offices of defendant William A. Mitchell, who was then President of the Central Trust Company. At this meeting it was disclosed that Cincinnati Transit Company was the largest shareholder of The Cincinnati Union Stock Yard Company, that it held its stock in the name of Hutton and Company, of which defendant William B. Stone is a registered representative, and that it was concerned about the public offering of plaintiff. Following this meeting, Cincinnati Transit Company made an offer to shareholders of The Cincinnati Union Stock Yard Company to purchase 15,000 shares at $18.25 a share; the offer to terminate on November 30, 1959. The Central Trust Company was in charge of all the financial details of the offer. (See Plaintiff's Exhibits B–1 through B–11 concerning plaintiff's offer of November, 1959 and the subsequent offer of Cincinnati Transit Company).

Subsequently, plaintiff and Cincinnati Transit Company commenced negotiations which resulted in the sale to plaintiff of Cincinnati Transit Company's stock in defendant corporation and plaintiff then became the largest single shareholder of The Cincinnati Union Stock Yard Company. (Defendants' Exhibits 22 and 31).

13. Subsequent to the aforementioned offers and sale, and for the past several years, plaintiff has made offers to shareholders of The Cincinnati Union Stock Yard Company which have been followed at times by communications from defendant corporation to the shareholders. (See for example, Plaintiff's Exhibits C–1 through C–11 and Defendants' Exhibits 37 through 41. There are also numerous exhibits in evidence wherein plaintiff made offers, by letters, to individual shareholders to purchase their shares).

14. At the May, 1960 meeting of the Board of Directors of defendant corporation, Dr. James G. Sheehan was retained

by the Board to prepare a highest and best use survey of The Cincinnati Union Stock Yard Company's real estate. This report was to be completed within three months or less, at a cost not to exceed $2,500.00. The report was completed in June, 1960 and all the directors received their copies of the report in the last week of June. On October 14, 1960, the minority directors made written demand on the Board that the Sheehan Report be considered at the next regular Board meeting and it was thereafter considered by the Board at its regular meeting in November.

15. At the June, 1960 Board meeting, the minority members of the Board introduced their "nine point program." (Defendants' Exhibit 94). Much testimony was given regarding this program and it is evident that the relations between the defendant directors and the minority directors had, by the time this program was introduced, become so strained that no intelligent discussion of the program could be had.

16. Plaintiff introduced evidence to show that the defendant directors adopted, over the objections of the minority directors, a by-law prohibiting the recording of the proceedings of the Board of Directors by anyone other than management, whether by stenographer or mechanical device, and a by-law creating an Executive Committee whereby the minority directors were excluded from said Committee and upon which five of the defendant directors served. The remaining two defendant directors, Murray Seasongood and Frank W. Durham, attended the meetings of the Executive Committee as legal counsel and recording secretary, respectively. Plaintiff also introduced evidence to show that the defendant directors denied its directors the right to the presence and the advice of counsel at the Board meetings.

The Court, with the consent of counsel for plaintiff and counsel for defendant, spent several hours listening to tape recordings of the Board meetings. Throughout these meetings, the representatives of Selama-Dindings not only failed to follow parliamentary procedure, but continuously harassed the defendant directors, often using abusive language. The conduct of the minority directors is reprehensible and inexcusable and frequently resulted in the temporary inability of the Chairman to proceed with the meeting. Therefore, the extraordinary actions taken by the defendant directors in adopting a by-law prohibiting the recording of the proceedings by anyone other than management, in adopting a by-law creating an Executive Committee and in refusing to allow the minority directors to have their own counsel present were necessary and in the best interest of defendant corporation.

17. Now, specifically as to plaintiff's first cause of action, the following is a résumé of the facts which led to the sale of real estate to Cincinnati Mine Machinery Company.

The Cincinnati Mine Machinery Company had been negotiating with the officers of defendant corporation for more than nine months prior to October, 1960, for the purchase of approximately 1.24 acres of real estate owned by defendant corporation. This real estate, in the opinion of the defendant directors, was not used and useful for stock yard purposes.

In October of 1960, as a result of further negotiations, Cincinnati Mine Machinery Company submitted a written offer to purchase the aforementioned real estate for $110,000.00 accompanied by a deposit of $5,000.00 as earnest money. The offer, by its terms, was to expire at 2:30 P.M. on October 28, 1960, and the officers of defendant corporation were informed by the representatives of the proposed purchaser that it had an option on other property and would exercise it and would no longer be interested in any property of defendant corporation if this offer were not accepted by the time specified.

This offer was satisfactory to the defendant directors, who constituted a majority of the directors of the Board. These directors also considered the fact that since the negotiations were made

without the aid of a real estate broker, defendant corporation would not be required to pay a real estate commission which ordinarily would have amounted to $6,600.00. Therefore, on October 26, 1960, Otto V. Moesch, Chairman of the Board and President of the corporation called a special meeting of the directors for 12:30 P.M. on October 28, giving all the directors due notice. The regulations of defendant corporation require at least 24 hour notice of a special meeting but do not require a statement of the purposes of the meeting. Notice was given in accordance with the corporation's regulations (Defendants' Exhibit 81). In addition to the notice required by the regulations, directors Charles E. King and Martin W. Glotzer were given, on October 26, oral notice of the purpose of the special meeting and on October 27 were given the essential terms of the offer of Cincinnati Mine Machinery Company.

All the directors of defendant corporation were present at the special meeting held on October 28, 1960 at 12:30 P.M. Directors Charles E. King and Martin W. Glotzer presented objections to the sale of the real estate in the form of a typewritten letter, signed on behalf of themselves and plaintiff. When it became apparent that the defendant directors intended to accept the offer of Cincinnati Mine Machinery Company, Charles E. King and Martin W. Glotzer, on behalf of plaintiff, purported to make an offer to purchase the real estate involved for the sum of $115,000.00. This purported offer was written on a business card of Charles E. King and was not accompanied by a deposit. The defendant directors refused to accept this purported offer and voted in favor of the sale to Cincinnati Mine Machinery Company and a written acceptance was delivered to that company before 2:30 P.M. Thereafter, the sale was consummated on November 10, 1960. (See Plaintiff's Exhibits D-1 through D-12 regarding the sale of the real estate).

■■■ The Court finds that the individual defendants were justified in the exercise of their sound discretion in refusing to accept the purported offer made on behalf of plaintiff because of the question of Charles E. King and Martin W. Glotzer's authority to make the offer without prior corporate authorization from Selama-Dindings and because of the lack of a deposit. The Court further finds that the individual defendants acted in good faith and in proper exercise of their discretion in accepting the offer of $110,000.00 of Cincinnati Mine Machinery Company. It is clear that no director received a personal profit from this sale.

Plaintiff has failed to prove by a preponderance of the evidence the allegations contained in the first cause of action of its Complaint.

■■■ 18. As to Plaintiff's second cause of action, the Court finds that the information secured by the defendant directors concerning Charles E. King, Martin W. Glotzer and their associates was secured in good faith for the purpose of giving information to the shareholders so that they could, at the shareholders' meetings or by proxies, exercise their judgment intelligently as to the policies to be pursued and the persons to control the future operations of the corporation. The defendant directors did not secure this information for their own purposes, i. e., to retain themselves as directors.

The allegation made by plaintiff that the individual defendants acted as they did regarding the proxy fight to retain their positions as directors is untenable. The comparatively small compensation received by the directors and the excessive abuses they endured because of the actions of plaintiff's representatives bolster this conclusion. The proxy contest was conducted by the defendant directors in good faith over corporate policies. It should also be noted that the only directors who are employed by the corporation and receive substantial salaries are Otto V. Moesch and Frank W. Durham and they have been voluntarily dismissed by plaintiff.

It is true that certain information revealed to the shareholders concerning Charles E. King and Martin W. Glotzer was not factually correct, though Murray

Seasongood, who issued said information, had reason to believe it was true at the time it was issued. However, all such information was later corrected. (See Plaintiff's Exhibits G-1 through G-27; E-1 through E-27 and Defendants' Exhibits 44, 99, 100, 106, 111, 128, 129, 144 and 145.)

The Court further finds that all the expenses which plaintiff alleges, in its second cause of action, to have been expended for improper purposes were incurred by the defendant directors in good faith on behalf of and for the benefit of defendant corporation. All such expenses were reasonable and were proper expenses to be charged to the corporation. (See Plaintiff's Exhibits F-1 through F-42).

The plaintiff has failed to prove by a preponderance of the evidence the allegations contained in its second cause of action.

19. During the course of the trial, plaintiff complained that the firm of Paxton and Seasongood, of which Murray Seasongood is the senior partner, should not be permitted to represent the defendant directors and the corporate defendant. That firm has for many years prior to this action been corporate counsel for defendant corporation and at no time in this proceeding has there been any conflict of interest which would require the firm to withdraw as counsel for any of its clients in this action; the firm has committed no breach of confidence or trust. And even if plaintiff's objection had merit, it was not timely asserted and for the Court to have required any of the named defendants to secure different counsel at such a late date in this proceeding would have been unjust. It should also be noted that Murray Seasongood abstained from voting in the directors' meetings upon the matter of counsel fees to Paxton and Seasongood and upon the matter of retaining the firm as corporate counsel.

20. Now, regarding the Counterclaim, defendants have alleged in their Counterclaim that plaintiff has conducted its campaign to gain control of defendant corporation by "impermissible and illegal methods."

During the trial, defendants attempted to show that plaintiff, through its representatives, made statements to deceive and mislead the shareholders of The Cincinnati Union Stock Yard Company and thereby enable plaintiff to purchase the shares at a reduced price. However, no person who sold shares of defendant corporation testified that he was mislead by statements made by or on behalf of plaintiff and defendants failed to show that Selama-Dindings has illegally acquired any shares of defendant corporation.

The Court finds that defendants have failed to prove by a preponderance of the evidence the allegations contained in the Counterclaim.

21. The Court does find however that many of the practices of plaintiff and its representatives, in addition to those noted in Finding of Fact 16, though not illegal, represent the exercise of extremely poor judgment and resulted in practices certainly not acceptable to ethical businessmen. One example was the insinuation by Charles E. King that Richard E. Turner had powers of voodoo which may have influenced the death of the President of the Illinois Brick Company (Defendants' Exhibit 204), after which Otto V. Moesch was sent literature from time to time on voodoo to his extreme harassment. (Defendants' Exhibits 206 and 207). There are also the post cards which Charles E. King admitted he sent to Murray Seasongood and signed "F. C.," indicating Fidel Castro. (Defendants' Exhibits 186 and 187). And there is the article concerning a person in Cincinnati who engaged in ambulance chasing which Charles E. King sent to Murray Seasongood enclosed with a note stating, "I hear that he was a pal of yours." (Defendants' Exhibit 185).

And finally, there are the statements made by Charles E. King to the newspapers regarding the purchase of shares by Selama-Dindings. Many of these statements, though not proved illegal, are questionable as to their validity.

22. Defendants have also presented an argument to the effect that Edward Slovick was illegally elected as a director of The Cincinnati Union Stock Yard Company at the annual meeting of shareholders held on March 27, 1962. Defendants contend that there was no right to vote certain irrevocable proxies for the Selama-Dindings' directors. After his election to the Board, no attempt was made by defendants to supplement the pleadings in this action. The Court is of the opinion that the question of Edward Slovick's election to the Board of Directors of The Cincinnati Union Stock Yard Company is a collateral issue, and therefore, the Court makes no specific findings thereto. The Court should, however, note that the value of Edward Slovick's participation in the meetings has been minimal since the defendant directors control the Board.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and the subject matter of this action.

2. The State of Ohio has closed its courts to foreign corporations which are transacting intrastate business and have not obtained a license. Ohio Revised Code Section 1703.29(A). Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425 (6th Cir., 1962) and Manhattan Terrazzo Brass Strip Co., Inc. v. A. Benzing & Sons, 72 Ohio App. 116, 50 N.E.2d 570 (Court of Appeals for Franklin County 1943).

If a plaintiff could not prosecute its case in an Ohio State Court for the reason that it has failed to qualify to do business in Ohio, then it has no capacity to bring suit in this Federal District Court. Woods v. Interstate Realty Company, 337 U.S. 535, 69 S.Ct. 1235, 93 L. Ed. 1524 (1949) and Lyon v. Quality Courts United, Inc., 249 F.2d 790 (6th Cir., 1957).

What constitutes "transacting business" is a factual matter to be determined in each case. Short Films Syndicate Co., Inc. v. Standard Film Service Co., 39 Ohio App. 79, 82, 176 N.E. 893 (Court of Appeals for Cuyahoga County 1931). The Court has found that plaintiff is not transacting intrastate business in the State of Ohio within the provisions of Ohio Revised Code Section 1703.03 but, in fact, plaintiff is engaged solely in interstate commerce within the purview of Ohio Revised Code Section 1703.02, which provides: "Sections 1703.01 to 1703.31, inclusive, of the Revised Code do not apply to corporations engaged in this state solely in interstate commerce * * *." Therefore, plaintiff is exempt from qualifying to do business in this State. It follows that plaintiff has the capacity to institute an action in this Court.

3. Plaintiff, having alleged that it made demand upon the directors of defendant corporation to institute an action to recover the $5,000.00 difference between its offer and the offer of Cincinnati Mine Machinery Company, may prosecute its first cause of action.

Defendants, in their answer, allege that plaintiff cannot prosecute its second cause of action because it failed to make a demand upon the directors. The general rule is, of course, that:

"* * * The plaintiff must also allege with particularity his efforts to secure from the directors such action as he desires and the reasons for failure to obtain such action, or the reasons for not making such effort. * * *" Ohio Revised Code Section 2307.311.

However, since such a demand would have been futile, and for the further reason that counsel for plaintiff and counsel for defendant agreed in a pretrial conference that such a demand would have been futile, there has been a sufficient compliance with Ohio Revised Code Section 2307.311 and plaintiff may prosecute its second cause of action.

4. Defendant corporation is entitled to maintain its Counterclaim against plaintiff. Rule 13(a) and (b), Federal Rules of Civil Procedure.

5. Since the basic consideration in this action is the conduct of directors and

of a major shareholder, the Court deems it advisable to briefly review the law regarding their duties and obligations.

■ Each of the directors in this action and the plaintiff, being a major shareholder, stands in a fiduciary relationship to the corporation and to the minority shareholders, Pepper v. Litton, 308 U.S. 295, 306, 60 S.Ct. 238, 84 L.Ed. 281 (1939); Thomas v. Matthews, 94 Ohio St. 32, 43, 113 N.E. 669, L.R.A. 1917A, 1068 (1916); Perlman v. Feldmann, 219 F.2d 173, 175, 50 A.L.R.2d 1134 (2d Cir., 1955), cert. denied, 349 U.S. 952, 75 S.Ct. 880, 99 L.Ed. 1277 (1955) and Seagrave Corp. v. Mount, 212 F.2d 389, 396 (6th Cir., 1954), and that fiduciary obligation must in the first instance be measured by the law of Ohio, the state of incorporation of The Cincinnati Union Stock Yard Company. Perlman v. Feldmann, supra, p. 175.

In Goff v. Emde, 32 Ohio App. 216, 219, 167 N.E. 699, 700 (Court of Appeals for Cuyahoga County 1928) the Court stated:

"The duties of directors of a corporation seem to be well settled in this as well as other jurisdictions. They are bound to care for the corporate property, and conduct, and manage its affairs in good faith, and for a violation of these duties, resulting in waste or loss of its assets, they are liable, and must account for the same in the same manner as other trustees. * * *"

■ A fiduciary's duty includes the dedication of his uncorrupted business judgment for the sole benefit of the corporation in any dealing which may adversely affect it. Perlman v. Feldmann, supra, p. 176; Ashman v. Miller, 101 F.2d 85, 90–91 (6th Cir., 1939) and Kahn v. Schiff, 105 F.Supp. 973, 978 (S.D. Ohio 1952). See also Insuranshares Corporation of Delaware v. Northern Fiscal Corporation, Ltd., 35 F.Supp. 22 (E.D. Pa.1940) regarding the duties of those in control of a corporation when transferring ownership.

In Seagrave Corp. v. Mount, supra, p. 396, the Court of Appeals for the Sixth Circuit approved the following language of then Chief Justice Cardozo of the Court of Appeals of New York in Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546, 62 A.L.R. 1 (1928):

"* * * Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. * * *"

6. As to plaintiff's first cause of action, the Court having found that plaintiff has failed to prove the allegations contained in its first cause of action (Finding of Fact 17) concludes that plaintiff is not entitled to recovery thereon.

■ 7. As to plaintiff's second cause of action, the Court is of the opinion that the directors of a corporation have a duty to investigate any corporation or person whom they, in good faith, believe to be attempting to gain control of the corporation of which they are directors and to advise the shareholders of the information which was gathered. This is true even though the corporation or person attempting to gain control has not begun a proxy contest. Of course, the extent of the investigation must be dependent upon all the circumstances surrounding the attempt to gain control and the directors may incur reasonable expenses for the investigation and dissemination of the information.

■ If, as happened in this matter, a proxy contest occurs, the directors may, in good faith, defend their corporate policies. The following statement from Rosenfeld v. Fairchild Engine & Airplane

Corp., 309 N.Y. 168, 173, 128 N.E.2d 291, 293 (1955) is in point:

" * * * In the event of a proxy contest, if the directors may not freely answer the challenges of outside groups and in good faith defend their actions with respect to corporate policy for the information of the stockholders, they and the corporation may be at the mercy of persons seeking to wrest control for their own purposes, so long as such persons have ample funds to conduct a proxy contest. The test is clear. When the directors act in good faith in a contest over policy, they have the right to incur reasonable and proper expenses for solicitation of proxies and in defense of their corporate policies, and are not obliged to sit idly by. * * * "

See Steinberg v. Adams, 90 F.Supp. 604, 607 (S.D.N.Y.1950) and Hand v. Missouri-Kansas Pipe line Co., 54 F.Supp. 649, 650 (D.Del.1944).

And further, regarding expenditures by directors in soliciting proxies, the following quotation from II Loss, Securities Regulation (2nd edition) p. 860 is a general statement of the law:

" * * * reasonable expenditures in the interest of an intelligent exercise of the stockholders' judgment on the corporate policies to be followed may properly be charged to the corporation, whereas expenditures which are solely in the interest of the directors maintaining themselves in office may not * * *."

The Court, having found that plaintiff has failed to prove the allegations contained in its second cause of action (Finding of Fact 18) concludes that plaintiff is not entitled to recovery thereon.

■ 8. Regarding certain by-laws adopted by defendant directors over the objections of the minority directors, the Court agrees with the following expression found in 8 Fletcher, Cyclopedia Corporations, § 4191, pp. 727–730 (perm. ed. 1931):

"It is a general essential of their validity that by-laws shall be reasonable and not arbitrary or oppressive. Amendments and new by-laws, equally with those adopted in the beginning, must meet these general requirements. And by-laws must not only be reasonable in themselves but they must not be unreasonable in their practical application. * * * " [Footnotes omitted.] To the same effect, see Hornstein, Corporation Law and Practice, § 265, pp. 352–353 (1959).

■ However, in the matters before this Court, the by-law adopted by the defendant directors whereby plaintiff's representatives were prohibited from recording the proceedings of the Board of Directors' meetings, and the by-law creating an Executive Committee were neither unreasonable, arbitrary or oppressive under the circumstances.

■ The Court is also of the opinion that, as a general rule, an individual director has the right to the presence and the advice of his own counsel when he deems it necessary. Posner v. Southern Exhaust & Blow Pipe Co., Ltd., 109 La. 658, 667, 33 So. 641 (1902); Hornstein, Corporation Law and Practice, § 416, p. 514 (1959) and 2 Fletcher, Cyclopedia Corporations, § 418, p. 269 (perm. ed. rev. 1954). Once again, because of the peculiar circumstances in this case the Court believes the action of the defendant directors in refusing to allow the minority directors to have their own counsel present was justified.

■ 9. As to plaintiff's assertion that the firm of Paxton and Seasongood should not be permitted to represent the individual defendants and the corporate defendant, the Court concludes that it is not improper or illegal for a law firm to represent, in a shareholders' derivative suit, the corporate defendant and the individual directors when there is no conflict of interest and no breach of confidence or trust. See Murchison v. Kirby, 201 F.Supp. 122, 123 (S.D.N.Y., 1961); Marco v. Dulles, 169 F.Supp. 622, 630,

632 (S.D.N.Y., 1959), appeal dismissed, 268 F.2d 192 (2d Cir., 1959) and Otis & Co. v. Pennsylvania Railroad Company, 57 F.Supp. 680, 684 (E.D.Pa.1944), aff'd., 155 F.2d 522 (3rd Cir., 1946).

■ 10. Regarding defendant directors' third defense, that this action is not brought in good faith, a brief statement will suffice. It is the general rule that where a claimant is entitled to relief in respect to the matter concerning which he sues, his motives are immaterial. Higgins v. Shenango Pottery Co., 99 F.Supp. 522, 525 (W.D.Pa.1951).

11. As to the Counterclaim, the Court having found that defendants have failed to prove the allegations contained therein (Finding of Fact 20), defendants are not entitled to recovery.

The Court is familiar with the Restatement of Torts Section 529 as adopted by the American Law Institute and quoted with approval by the Supreme Court of the United States in Equitable Life Insurance Co. of Iowa v. Halsey, Stuart & Co., 312 U.S. 410, 425–426, 61 S.Ct. 623, 630, 85 L.Ed. 920 (1941):

" 'A statement in a business transaction which, while stating the truth so far as it goes, the maker knows or believes to be materially misleading because of his failure to state qualifying matter is a fraudulent misrepresentation.'

Such a statement of a half truth is as much a misrepresentation as if the facts stated were untrue. * * * "

However, the facts in this case do not warrant the application of the foregoing law.

If plaintiff had made fraudulent misrepresentations and certain shareholders, relying on such misrepresentations, had either sold shares or given proxies to plaintiff, would those shareholders have a cause of action against plaintiff? And would the cause of action be one which the injured shareholders themselves must assert or could it be asserted for them by the corporation? Of course, the Rules of the Securities and Exchange Commission become relevant at this point. The

Court notes, but need not decide, the foregoing questions. But see generally Howard v. Furst, 238 F.2d 790 (2d Cir., 1956), cert. denied, 353 U.S. 937, 77 S.Ct. 814, 1 L.Ed.2d 759 (1957); Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir., 1952) cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952); Zahn v. Transamerica Corp., 162 F.2d 36, 172 A.L.R. 495 (3rd Cir., 1947) and Speed v. Transamerica Corp., 99 F.Supp. 808 (D.Del.1951).

## JUDGMENT

In accordance with the foregoing Findings of Fact and Conclusions of Law, it is hereby ordered, adjudged and decreed:

That plaintiff's Complaint should be and it hereby is dismissed and judgment thereon is hereby entered in favor of each of the named defendants not hereinbefore already dismissed, viz., William A. Mitchell, Murray Seasongood, William B. Stone, W. Craig Weaver and Emil E. Work.

That defendants' Counterclaim should be and it hereby is dismissed and judgment thereon is hereby entered in favor of plaintiff.

That the costs of this action, but not including defendants' attorneys' fees, should be and they hereby are assessed against plaintiff.

It is further ordered, in the interest of justice, that the Order of this Court entered December 20, 1962, which provides that:

"there shall be no meeting of stockholders of The Cincinnati Union Stock Yard Company, regular or special, and no proxy solicitation with the stockholders of said company by any of the parties hereto, their officers, directors, agents or employees,"

should be and it hereby is continued during and throughout the period within which an appeal may be taken from this decision to the Court of Appeals for the Sixth Circuit and, if an appeal be so taken, such Order shall remain in effect during and throughout the period of the pendency of the appeal or until further

Order of the Court of Appeals for the Sixth Circuit.

The Clerk shall forthwith enter judgment as herein provided; no entry of counsel required. Counsel for defendants shall file a bill of costs with the Clerk within five days.